## LEONARD S. WHEELOCK *vs.* BOSTON & ALBANY RAILROAD COMPANY.

In an action against a railroad corporation, for personal injuries sustained by the plaintiff at a station of the defendants, by being struck by a train running eastward at an unusual speed and without any warning of its approach, upon their south track, which he was attempting to cross, as was usual for passengers, and as other persons were doing at the same time, on his way from the platform of the station-house to take passage on a train standing upon the north track, and about to depart westward within a minute, there was no evidence that before entering on the south track he looked westward for the purpose of ascertaining if a train was approaching upon that track from that direction. But the evidence tended to show that the distance he walked across the platform to the south track was about forty feet; that while walking the first twenty feet he was looking westward along the platform to see an acquaintance, and his line of vision embraced the track for a considerable distance in that direction; and that he neither saw nor heard the approaching train. *Held,* that the question whether he used due care was for the jury.

TORT for personal injuries sustained by the plaintiff by being struck by the defendants' locomotive engine on their railroad track in Ashland, and alleged to have been caused by their negligence. Trial in this court, before *Morton,* J., who reported the case as follows:

" On September 17, 1869, the plaintiff attempted to cross the south track of the defendants' railroad from the platform of their passenger-house at Ashland, in order to take passage on a train of their cars standing upon the north track, to go to Grafton. The plaintiff resided in Grafton; was engaged in business at Framingham; was in the habit of going from Grafton to Framingham by one of the morning trains, and returning to Grafton in the afternoon by the train upon which he attempted to take passage, and for that purpose had provided himself with a commutation ticket which entitled him to twenty-six conveyances over the road, between Framingham and Grafton, and which then entitled him to several passages over the road. On the afternoon in question, having occasion to transact some business in Ashland, he went there, with another person, in a carriage from Framingham, a distance of about four miles, (Ashland being one of the intermediate stations between Framingham and Grafton,) passing the station and crossing hereinafter mentioned; and having transacted his business he drove to the station-house at Ashland, crossing the tracks of the railroad at a highway crossing about two hundred feet west of the station-house. Arriving at the station-house, which stood upon the south of the tracks, he alighted from his carriage upon the southwest corner of the platform there. As he was crossing the tracks as aforesaid at the highway crossing, the train in which he sought to take passage arrived in front of the station-house; and stopped for the purpose of receiving and discharging passengers, while he was passing from the crossing to the place where he alighted.

" There was an open and travelled place from the highway which crossed the track as aforesaid on the north side of the railroad; and a platform on the north side of the north track; to which platform the plaintiff could have come and taken the train which he desired to take, by passing over said travelled place, without crossing the tracks as aforesaid or going to the south side of the railroad; but the plaintiff said that he did not know at the time that he could so take the train.

" The usual time of stopping was about one minute. Having alighted, the plaintiff made some remark to the person in the car-

riage, and then proceeded in a straight line down the platform, by the west end of the station-house, to the railroad track, the baggage car of the train being immediately in front of him. When crossing the railroad before arriving at the depot, as aforesaid, he had observed a person, whom he thought to be one Wetherby, standing on the south platform about seventy-five feet west of the northwest corner of the station-house ; and as he passed from his carriage towards the track, he looked at this person to see if it was Wetherby, — looking in a northwesterly direction, so that his line of vision embraced as much of the railroad track as could be seen from the point where he was. He continued to look at the person while walking about half the distance from the place where he alighted to the railroad track ; and then he turned his head to the front, and looked towards the baggage car of the train he was to go on, being attracted by some article that was being removed from the car. While looking in the northwesterly direction at said person, he saw persons standing upon the platform ; he also saw a small building used as a flagman's station, and his view of the track was somewhat obstructed by the building and by the persons standing on the platform. He said that he would not say that he saw any part of the railroad track when looking in a northwesterly direction as aforesaid ; and he did not state that at any time he looked for the purpose of seeing if a train was or was not coming on the track on which he stepped when he turned his head to the front. He also saw persons passing to and fro between the passenger-house and the train upon which he intended to take passage. Arriving at the edge of the platform, he stepped upon the railroad track, attempting to cross where it was customary for passengers to cross ; and in attempting to cross he went a little diagonally across the track toward the train, with his back partially to the west ; and having taken one or two steps upon said track, he was struck and seriously injured by the engine of a train approaching from the west, which was twenty minutes behind time, running at an unusual rate of speed without any warning of its approach.

" There was no plank walk at the place where the plaintiff so stepped on the track. He testified that the track was straight for half a mile towards the west, the direction from which the train

that struck him came. The distance from the place on the platform where he alighted from his carriage, to the railroad track where he was struck, was about forty feet, which distance he walked without interruption at an ordinary walking gait ; he saw no approaching train, when looking in the northwesterly direction as aforesaid, and he did not again look in that direction before he was struck ; he heard no approaching train ; he knew that the train by which he was injured was not due at that time, but supposed it had passed about twenty minutes before, Framingham being the usual place of the meeting of these trains ; there was no flagman at the crossing when he passed with his carriage a minute or so before, as was usual when trains were expected ; he was not warned of the approaching train by any agent or employee of the defendants ; there was nothing about his person or dress to prevent his seeing or hearing as well as persons ordinarily can ; and he did not expect any train to come on that track at that time.

" Upon the foregoing facts, the defendants asked the judge to direct a verdict in their favor, on the ground that there was no evidence that the plaintiff was in the exercise of due care at the time of the injury. The judge directed a *pro formâ* verdict for the defendants ; and the case is reported for the opinion of the full court upon that question."

*G. F. Verry*, for the plaintiff.

*G. S. Hale & F. P. Goulding*, for the defendants.

MORTON, J.* In cases of this nature, the burden of proof is upon the plaintiff to show that he was in the exercise of due care at the time he was injured. In numerous recent cases it has been held that if the evidence discloses an act of carelessness on the part of the plaintiff, contributing to his injury, or if there is no evidence to show that he used the precautions and vigilance, which, according to common experience, men of ordinary prudence exercise under like circumstances, and there appears no reasonable excuse for his failure to do so, it is the duty of the court to direct a verdict for the defendants. This is upon the ground

---

* COLT, J., did not sit in this case.

that the undisputed facts, viewed in the light of the common knowledge and experience of men, of which the court must take notice, show that the plaintiff has failed to prove an essential element of his case, namely, that he was in the exercise of ordinary care. But when the question, whether the plaintiff was using ordinary care, depends upon a variety of circumstances and the inferences to be drawn from them as to the effect which they would have upon the motives and conduct of men of the usual prudence and intelligence, and it cannot be said, as a matter of common knowledge and experience, that the plaintiff was careless, then the law refers the question to the judgment and experience of the jury.

A person cannot be said to be in the exercise of due care who enters upon a railroad track without using reasonable vigilance to ascertain whether a train is approaching. But the degree of care which a prudent man would use depends upon the time and circumstances. Thus, where a person entered upon a railroad track at a highway crossing, without looking to see if a train was approaching, and without any reasonable excuse for not looking, and thereby received an injury, it was held that he was careless and could not recover. *Butterfield* v. *Western Railroad Co.* 10 Allen, 532. *Allyn* v. *Boston & Albany Railroad Co. ante*, 77. On the other hand, it has been held that when a man attempted to cross a railroad track at a station, for the purpose of taking the cars, without looking to see if a train was approaching, but did so upon the invitation and direction of the station agent, it was a question for the jury whether in so doing he was in the exercise of due care. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227.

In the case at bar, there are some circumstances which distinguish it from the class of cases first above cited. There was no evidence that the plaintiff looked up the track for the purpose of seeing if a train was approaching; but he testified that he looked up the platform to see an acquaintance, and that his line of vision embraced the track for a considerable distance in the direction from which the train by which he was injured came. It also appeared that he was there for the purpose of taking the cars; that

the passenger train, which he was about to take, stood upon the opposite track, discharging and receiving passengers; and that passengers were passing across the track in both directions, between the cars and the station-house. These circumstances may amount to an implied invitation on the part of the defendants to the plaintiff to cross the track, and an implied assurance that it would safe to do so. They furnished some reason for not using the degree of care which one would naturally exercise where his safety depended wholly on his own watchfulness. *Chaffee* v. *Boston & Lowell Railroad Co.* 104 Mass. 108.

Upon a careful consideration of all the evidence, we are of opinion that the question, whether the plaintiff was in the exercise of due care, was one within the province of the jury to decide, and should have been submitted to them under proper instructions. *New trial ordered.*

Upon a second trial, at April term 1871, the jury returned a verdict for the defendants.