# CHARLESTON.

JOHN F. PIERCE'S EXECUTRIX v. B. & O. RAILROAD Co. *et al*

## (No. 5308)

Submitted May 19, 1925.   Decided June 9, 1925.

1. CARRIERS—*Carrier Impliedly Inviting Passengers to Leave Station by Certain Way is Bound to Use Reasonable Precautions to Insure Their Safety; Fact That Way by Which Carrier Impliedly Invites Passenger to Leave Station is Public Highway Does Not Affect Degree of Care Owed by Carrier.*

   Where a carrier impliedly invites its passengers to leave its station by a certain way, it is bound to do what is rea-

99 W. Va.

sonably necessary to insure the safety of passengers leaving by said way. The fact that such way across its track is a public highway does not affect the degree of care due the passengers by said carrier. (p. 317.)

2. SAME—*Passenger Leaving Station Using Means of Egress Provided by Company or Customarily Used With its Knowledge and Consent Remains Passenger Until Crossing Track Over Which Way of Egress Lays.*

If a passenger on a railroad train alights at a station of the railroad company, and in order to leave the premises of said company, it is necessary to cross its track, he remains a passenger until he has crossed such track, provided he uses the means of egress which the company has provided, or which is customarily used with its knowledge and consent; and, there is an implied agreement that the company will do what is reasonably necessary in the operation of its trains to insure the safety of the passenger leaving that way. (p. 317.)

3. SAME—*Passenger Leaving Station by Way Over Tracks May Be Justified in Presuming That Trains Will Not Be So Operated as to Impose on Him Degree of Care of Traveler at Public Railroad Crossing.*

A passenger under such condition using said course, while not absolved from the duty of exercising care to avoid danger, may be justified in presuming, in the absence of circumstances of warning, that the trains of the company will not be so operated as to impose on him the same high degree of care which he would be required to exercise, if he were not a passenger, but a traveler crossing the railroad at a public crossing. (p. 320.)

4. RAILROAD—*Automobile Passenger Must Use Ordinary Care.*

While the negligence of the driver of an automobile cannot be imputed to a mere passenger, the latter must use such care for his own safety as an ordinary prudent person would exercise under like circumstances. (p. 323.)

5. SAME—*Automobile Passenger's Negligence Generally Question for Jury.*

Whether a passenger riding in an automobile driven by another for hire exercises such care for his own safety as a reasonably prudent person would take under like circumstances, is generally a question of fact for the jury. (p. 324.)

Error to Circuit Court, Preston County.

Action of Amanda E. Pierce, executrix of John F. Pierce, deceased, against the Baltimore & Ohio Railroad Company

and others.    Judgment for plaintiff and defendants bring error.

*Affirmed.*

*P. J. Crogan* and *Wm. G. Conley,* for plaintiffs in error.
*F. E. Parrack* and *J. V. Gibson,* for defendant in error.

WOODS, JUDGE:

Amanda E. Pierce, executrix of John F. Pierce, deceased, obtained a verdict for $3,500.00 in the Circuit Court of Preston County, against the Baltimore & Ohio Railroad Company, in an action of trespass on the case, alleging that the deceased, a passenger on said railroad, had been killed while leaving the Kingwood station by the wrongful act of employes of said railroad company.    The railroad company comes here on writ of error.

The railroad station at Kingwood is located some distance below the town proper and on the opposite (North) side of the railroad track.    A very steep road leads from the town down to the track which it crosses at about right angles, and after crossing turns abruptly East almost parallel with the track away from the station.    The station is located a short distance above, or West from said crossing.    A plank walk, or wing of the platform, extends along the North side of the track practically to the crossing.    Taxies and other vehicles after crossing to the station side of the track, go in on the company's grounds, swing around facing the track, pull up with the front end against this walk or platform East of the station, and when loaded back away from said walk or platform, turn toward the crossing, go over it and up into Kingwood.    This is the only road leading from the station to the Town of Kingwood..    All vehicles approaching or leaving the station are on the company's property when on the station side of the track.    The track approaches the crossing from the East on a 1.5% grade, crosses same and continues for a distance of more than 800 feet on a .72% grade—passing on the South of the station and around it in a horse-shoe curve.    The station is located on the curve.

On May 20, 1922, John F. Pierce, a man of seventy-two years of age and inclined to be feeble, alighted at Kingwood station, having boarded the passenger train at Rowlesburg. Said train at the time so blocked the crossing that passengers could not go up into Kingwood until after it had pulled further up the grade. After the passenger train stopped at the station, a double-freight—two engines in front and two behind—approached the station down the grade from the West and stopped on the main track just above the "Y," the front engine being 200 feet or more above the center of the station and 368 feet above the point on the crossing where Pierce was later struck and killed by it. On account of the curve, the double freight was obstructed from view by the station to any one North of the walk or platform where the taxies were stationed, though the track could be seen for some distance beyond the station. The passenger train, after receiving and discharging passengers, pulled forward and took the siding to allow said freight to clear. After the passenger train pulled beyond the station, Howard Fields, the taxi driver in whose car Pierce had gotten, looked to see if he could see or hear anything; he then backed his car down from the platform so that he could straighten out to make the crossing, and at that time saw the freight in back of the station standing still. Fields had driven an automobile several years; had a chauffeur's license, and met the trains and drove for hire. When within a few feet of the crossing, Fields noticed, for the first time, an engine drifting rapidly down from the West toward him, and seeing that he could not stop his car short of mid-way of the crossing, in order to avoid collision, put on the gas and "skipped" over ahead, and just missing the approaching engine. At about this time he heard someone "halloo" back of him. Pierce, the only passenger and occupant of the rear seat, evidently on seeing the danger, endeavored to alight from the side of the taxi away from the rapidly approaching engine, and fell on the track and was run over and killed.

The plaintiff in error complains of the action of the circuit court in overruling its demurrer to the declaration and to

each count thereof. It contends that there is averred therein a higher legal duty from the carrier to the plaintiff's decedent than is warranted by the facts. It is elementary that matter of law need not be pleaded. Where a peculiar state of facts raises a peculiar duty, it suffices to set them up and aver a breach of the duty the law raises from them, together with the resultant injury. But, if the duty expressly averred as being broader or higher than the law imposes, no harm can result, for the declaration is not evidence, and the court can direct the inquiries of the jury along proper lines, by means of instructions. The demurrer was properly overruled. *Lawrence* v. *Hyde,* 77 W. Va. 639; *Turk* v. *Railway Co.,* 75 W. Va. 623.

This is a case which calls for a determination of the reciprocal duties of railroad companies and of passengers after the latter have left the train. That the railroad company owes to the passenger while boarding, riding on, and alighting from trains the highest degree of care for their safety is so well settled in our law as to not require citation of authority to sustain it. The care required of a carrier for the protection of a passenger on its premises involves reasonable care to provide and maintain safe and adequate stations, platforms, walks, steps, and landings for use in waiting for, approaching, and leaving trains or other means of conveyance in which the transportation is to be or has been furnished. 10 C. J. 916; *Barker* v. *O. R. R.,* 51 W. Va. 423; 90 A. S. R. 808. When does the relation of carrier and passenger terminate? In general this relation of carrier and passenger continues until the passenger leaves the station premises unless his departure therefrom is unreasonably delayed. This duty of the carrier to the passenger extends further under certain circumstances. This case must turn on the question whether the deceased, at the time he was killed, stood in the relation to the railroad company of a passenger to whom it owed a duty.

In general, the requirement is that the carrier shall use reasonable care in furnishing safe and adequate approaches to the station and platforms and vehicles for passengers

going aboard or leaving the same. 10 C. J. 912; *Chesapeake Ry. Co.* v. *Mathews,* 114 Va. 173; *C. & O. Ry. Co.* v. *Smith,* 103 Va. 326, and numerous cases there cited. This liability of the carrier is applicable with reference to approaches provided by others, but in general made use of by passengers with the express or implied approval of the carrier. Where a carrier impliedly invites its passengers to leave its station by a certain way, it is bound to do what is reasonably necessary to insure the safety of passengers leaving that way. *Wiley* v. *Rutland R. R. Co.,* 86 Vt. 504. The duty of a railroad company to exercise reasonable care in affording safe approaches to the station and platform applies to approaches constructed and owned by the city, if constantly and notoriously used by passengers as a means of approach. *Schlessinger* v. *Manhattan Ry. Co.,* 98 N. Y. S. 840. The fact that the way across railroad tracks used by an alighting passenger in going to the station is a public highway does not affect the degree of care due him by the carrier. *Washington Ry. Co.* v. *Vaughan,* 111 Va. 785; *Cross* v. *Lake Shore R. R. Co.,* 69 Mich. 363. The passenger is entitled to every facility in making his entrance and exit, and to freedom from interruption and danger while so doing. *Goldberg* v. *N. Y. Central,* 15 N. Y. S. 579; *Klein* v. *Jewett,* 26 N. J. Eq., 474; *Gonzales* v. *New York & Harlem R. Co.,* 39 How. Prac. (N. Y.) 407; Ray on Negligence of Imposed Duties, 134; *State* v. *B. & O. R. R.,* 69 Md. 463; Wood's Railway Law, 1169; *Flanagan* v. *P. W. & B. R. Co.,* 181 Pa. 242. If a passenger on a railroad train alights at a station of a railroad, and in order to leave the premises of the company it is necessary to cross its track, he remains a passenger until he has crossed such track, provided he uses the means of egress which the company has provided, or which is customarily used with its knowledge and consent; and there is an implied agreement that the trains of the company shall not be so operated as to make the exit unnecessarily dangerous. *C. & O. Ry. Co.* v. *King,* 99 Fed. Rep. 251. From the foregoing decisions is evolved the rule that, where a carrier impliedly invites its passengers to go to and from its station in a certain course, it is bound to do what is

reasonably necessary to insure the safety of passengers so using that course.

Let us make application of the foregoing legal principles to the case under consideration. The deceased had been a passenger on the west bound train and alighted at the station of the defendant company at Kingwood. The passenger train on which he had been riding was still on the side track and had not yet resumed its journey westward to Morgantown. The passengers leaving this train at this place had not yet left the station. The deceased was one of that number. The truckmen were still busy loading the goods that had been unloaded from the train on their trucks preparatory to delivering them to the consignees in the town. The taxi was there at the station and on the company's grounds at the implied invitation of the defendant, the ordinary mode for the departure of the passengers. In order for the taxi to carry passengers to the city it was necessary to cross the defendant's track. This was the only mode of egress from the station. The defendant's grounds abutted on this road. As we have seen, the fact that it was a public highway does not affect the degree of care due passengers who are compelled to use this way in departing from defendant's grounds. Pierce did not delay for an unreasonable time in leaving the station. In fact, the taxi selected for his departure was the first taxi to leave the station after the departure of the passenger train. He was being carried in this taxi, across said way over the track, when he was killed by an engine driven by the employes of the defendant company. That it was the duty of the defendant company to provide a reasonably safe exit over its track for said passenger, under the circumstances of this case, is plain. If it failed to perform such duty it was negligent. The defendant in error claims that the evidence justified a conclusion that the railroad was negligent in running its engine across this crossing at this particular time at an undue high rate of speed. The engine was drifting down a grade of three-fourths of one per cent. noiselessly. The engineer says: ''I do not know how fast I was going—think it was five to eight miles per

hour." The fireman puts the speed at which they were traveling at eight to ten miles per hour. Shaffer, who was standing on the railroad platform at the time, estimated its speed as twenty to twenty-five miles per hour. The taxi driver Fields says, "The engine was drifting and going pretty fast." The fact that the engine ran over 140 feet after it had struck the decedent and after the engineer had applied the brakes and emergency before stopping, tends to establish a high rate of speed. This was for the jury. Apropos to this question are the words of this court in *Cavendish* v. *Railway Company*, 95 W. Va. 498: "At common law a railroad must exercise ordinary care to prevent collision with travelers on the highway; the care must be proportioned to the danger; and where the surroundings are such as to render the crossing peculiarly dangerous it is the duty of the company to exercise care commensurate with the danger especially where the company has created the added danger. *Atlantic Coast Line* v. *Grubbs,* 113 Va. 214, 74 S. E. 144; *New York, etc., Ry. Co.* v. *Randel,* 47 N. J. L. 144, 23 Am. & E. Ry. Cases 308; *Weaver* v. *Columbus, etc., Ry.,* 76 Ohio St. 164, 181 N. E. 180. More precaution is required at a crossing in a city, than in the country where the chances of accident are less. The jury may have concluded, and the evidence would justify it in finding that although crossing signals were given, defendant negligently operated the train in respect to its speed and did not approach the crossing with due care in view of the dangerous situation created by it." But we think it must be held that there was enough in the evidence to justify the jury in finding that the defendant railroad was negligent in not giving proper warning, by bell or whistle, of the approach of the engine at the station where it was charged with notice that a few minutes before passengers had been discharged from one of its trains, who, in going from the station to the city, would necessarily be compelled to cross defendant's tracks. The driver of the automobile said he heard no whistle. He was in a position to have heard, if one had been blown. The engineer and fireman testified that the usual whistle was blown for the crossing. Still there were several engines near, puffing and emitting steam and

sounds incident to them.   That such confusion existed finds
proof in the statement of J. G. Schmiddle, a witness for de-
fendant, that—"I heard a whistle blow, but I wasn't sure
whether it was the engine that killed Pierce or not."   Harry
Hanst, the station agent, said:   "I couldn't say; don't re-
member whether the engine sounded signals or not."   It is
significant that C. T. Wotring, another witness for defendant,
who said he was standing on the platform, saw the engine go
by, but he was not asked if he heard the signal.   He was
close the semaphore where the fireman claims the whistle was
sounded.   Whether a conflict arises between positive and
negative evidence of this character depends upon the facts and
circumstances of each case from which it may be determined
whether such negative evidence has any probative value. When
a conflict it is for the jury to determine. *Carnefix* v. *Ry. Co.,* 73
W. Va. 534.  Admitting the fact that the engineer and fireman
were right in their statement that the whistle was blown as
usual for the crossing, the effect of such warning under the
circumstances here was neutralized—in fact wholly destroyed
by the noise of five other puffing engines and whistling signals
only understood by the railroad employees immediately con-
cerned.   The statute is imperative that not only shall the
signal be given at least sixty rods from the crossing, but it
further provides that "the bell be kept ringing, or the whistle
blowing for a time sufficient to give due notice of the ap-
proach of such train before such street or highway is
reached."   It is admitted that the bell was not rung here.
The ringing of the bell would in all probability have averted
this accident.   The signals required by the statute relate to
public crossings and not to a crossing such as we have here,
which the company impliedly invites its passengers to use
in approaching and departing from its station.   *Terry* v.
*Jewett,* 78 N. Y. 344; *Gulf R. R. Co.* v. *Morgan,* 26 Tex. Civ.
App. 378.   The evidence was sufficient to justify the jury
in finding that the agents and employees of the defendant
company operating the east bound engine were negligent in
running said engine, at that particular time, past the sta-
tion and over the crossing used by its passengers as a means

of approach and departure from trains of said railroad company at a speed such as to imperil the safety of such passengers, without proper warning.

The plaintiff in error claims that the taxi driver failed to stop, look and listen, and by reason of such failure the accident was occasioned. This position is taken, relying upon the well established and salutary rule in this state, requiring a person about to cross a railroad track to look and listen for an approaching train and to stop and listen if necessary to make his listening effective and to be especially vigilant respecting listening if vision is obscured, continuing as long as the discovering of a train will enable him to avoid injury. *Robertson* v. *Monongahela Power & Railway Company,* 99 W. Va. 356, and *Krodel* v. *B. & O. R. R. Co.,* 99 W. Va. 374, both decided this term. However, the taxi driver in answer to the following question: ''When you got in your taxi to start from the platform state whether or not you looked around and observed whether or not there were trains approaching?'' replied: ''Before I got in my car I noticed it, and there wasn't anything coming just then.'' Q. ''Then when you backed down from the station into the bottom state if you then observed whether there were any trains approaching the crossing?'' A. ''Well I did, of course I could see whether there was anything coming west, but not the other way, on account of the station; I could see the freight back there.'' Thus it would seem he sustained the burden required of him, under ordinary conditions. The cases, however, recognize an exception to the general rule, and the instant case comes within the exception. We have already cited authorities in this opinion defining the reciprocal relation of carrier and passenger as to rights and duties. We supplement these with others. In *Flanagan* v. *P. W. & B. Co.,* 181 Pa. 237, the court said: ''It is true that the duty of a person about to cross a railroad track to stop, look and listen for an approaching train is not always applicable to a passenger at a station going to or from his train; the obligation upon him may be totally different from that of a person at a public crossing. *Pa. Ry. Co.* v. *White,* 88 Pa.

327; *Kohler* v. *Pa. R. Co.*, 135 Pa. 346, 19 A. 1049. If the way provided is across a track, he may rely upon the performance by the company of the duty to keep the track clear while passengers are in the act of passing between the train and station.'' But had the taxi driver been negligent, is such negligence imputed to the plaintiff's intestate? The rule must be regarded as now fully settled, both in England and America, and certainly in this state, that the negligence of the driver of the vehicle cannot be imputed to a passenger therein, when the passenger is free from personal negligence, and has no control over the driver, and has not been guilty of any want of care in his selection. *Young* v. *Railroad Company*, 96 W. Va. 534; *Eleyton Land Company* v. *Mingea*, 89 Ala. 521; *Schultz* v. *Old Colony Street Ry.*, 193 Mass. 309.

The deceased was a passenger on the incoming train. After alighting, in his manner of leaving the station there seems to be no negligence. He selected a taxi that was on the company's grounds by its invitation. The driver was a man of experience. He was accustomed to meet the trains at this point and to convey passengers up into the city. Nothing is shown in evidence that he had knowledge of the location of the trains after he left the train on which he was a passenger. This particular train had left the station on its way to its destination. It is not shown that the decedent knew that it had taken siding. He was under no duty, in the absence of unusual circumstances, to direct the conduct of the driver. *Young* v. *Railroad Co., supra.* Whether a passenger riding in an automobile driven by another exercises such care for his own safety as a reasonably prudent person would take under like circumstances, is generally a question of fact for the jury. *Young* v. *Railroad Co., supra; White* v. *Portland Gas & Coke Co.*, 84 Ore. 643. Under such conditions, while not absolved from the duty of exercising care to avoid danger, he may be justified in presuming, in the absence of circumstances of warning, that the trains of the company will not be so operated as to impose on him the same high degree of care which he would be required to exercise if he were not a passenger, but a traveler crossing

the' railway at a public crossing. *C. & O. Ry. Co.* v. *King,. supra.* Of course, if there be threatened danger which is known to the passenger and unobserved by the driver, the passenger would be guilty of negligence if he failed to notify and warn the driver. In the instant case the situation of known peril, just before the impact, came doubtless upon both of the occupants of the automobile quickly and unexpectedly. The driver lived to state his actions in the emergency. As to the passenger's actions we are left largely to conjecture. That the shout heard by the driver was that of the passenger is altogether probable. It was uttered at the time that the danger became imminent to him. In his extreme peril he doubtless jumped from the side of the car opposite the approaching engine, or was thrown from the car by force of the sudden application of additional power by the driver. In either case can it be said he was negligent? The standard of care is the conduct of a reasonably prudent person in such environment. The application of this rule must be left to the judgment of the twelve triers of the fact. The court cannot presume that he did not do all the law required him to do to avoid the accident, or that he contributed to his death to an extent precluding recovery in this action. *Carnefix* v. *Railway Co., supra; Young* v. *Railroad Co.,* 44 W. Va. 221; *Railroad Co.* v. *Bryant,* 95 *Va.* 221; *McBridge* v. *Railroad Co.,* 19. Ore. 64. Contributory negligence is defensive. He who would rely upon' it to defeat recovery must prove, by a preponderance of the evidence, the fact of negligence, and that it was the proximate cause of the injury. *Carnefix* v. *Railway Co., supra; Carrico* v. *Railway Co.,* 39 W. Va. 86; *Mullens* v. *Ry. Co.,* 94 W. Va. 601. This rule has been adopted by the United States Supreme Court and nearly all the states of the Union. 1 Shearman & Redfield's Neg. 108. While one who is about to cross over a railroad crossing must use ordinary care for his own personal safety, and avoid going into a position wherein collision with an approaching train is inevitable; yet the mere fact that he did get into such position is not conclusive evidence of contributory negligence on his part. Whether he used due

care is a question for the jury. *Kimball* v. *Friend*, 95 Va. 125; *Carnefix* v. *Railway Co., supra; Graven* v. *MacLeod*, 92 Fed. 846. *St. Louis & S. W. Railway Co.* v. *Jonson*, 59 Ark. 122; *Wheelock* v. *Boston R. R. Co.*, 105 Mass. 203; *Hirsch* v. *N. Y. R. R. Co.*, 6 N. Y. S. 162. The ordinary rule as we have seen, "look and listen," has no application to such a situation. When a railroad company operates a train under such circumstances, as shown in this case, it assumes the peril. 2 Shearman & Redfield on Neg., Sec. 525; 1 Thompson Neg., Sec. 25-21; *Tubbs* v. *Michigan Central R. R. Co.*, 107 Mich. 108; *Terry* v. *Jewett, supra; Denver R. R. Co.* v. *Hodgson*, 18 Colo. 117. The jury having found that decedent was not negligent, and there being evidence to support their verdict, we conclude that the court did not err in overruling defendant's motion for a new trial based upon that ground.

In view of the facts of the case and our holding thereon, the requests for instructions presented by the defendant were not correct propositions of law and were properly refused. Those given in its behalf expressed with accuracy the fulness of its rights.

The remaining assignments of error complain of the action of the court in admitting certain evidence and excluding other evidence. We have carefully examined these several assignments and conclude that no reversible error is shown by any of them. We therefore must overrule all assignments of error not discussed. Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court, which is affirmed.

*Affirmed.*