Don McClaugherty, *Admr., etc.* v. Tri-City Traction Company

(No. 9125)

Submitted February 4, 1941. Decided March 4, 1941.

*Crockett & Gillespie* and *Walter G. Burton,* for plaintiff in error.

*H. E. DeJarnette,* for defendant in error.

ROSE, JUDGE:

Don McClaugherty, as administrator of the estate of Samuel W. Berry, deceased, prosecutes this writ of error to an order of the Circuit Court of Mercer County by which a verdict in his favor against the Tri-City Traction Company was set aside by the trial court, and a new trial awarded.

The defendant, Tri-City Traction Company, operates an interurban electric railway between the cities of Princeton and Bluefield in Mercer County. These cities are also connected by a highway known as U. S. Route 19 and U. S. Route 21, which crosses the railway tracks diagonally from east to west, about three miles south of Princeton. The highway is paved with a concrete slab twenty feet wide. North and south of the crossing, the

highway is practically straight and level for a distance of approximately two hundred yards in either direction. The country about the crossing is opened and unobstructed, except that about one hundred feet north-east of the crossing there was a signboard twenty-one and one-half feet in length and of such height as to conceal an approaching trolley car to a part of the height thereof. A motorist driving north on the highway could see the crossing for a distance of five hundred and seventy feet, and could see the railway tracks to the right for a distance of about two hundred yards, except for that portion of the tracks obstructed by the signboard; and a motorman on the trolley car, approaching from the right, could see the crossing for about two hundred yards and could, from the same point, see an automobile approaching from the south for a distance of five hundred and seventy feet from the crossing.

The accident resulting in decedent's death happened a few minutes after two o'clock P. M. on the second day of January, 1939. The day was clear and the road was dry. The plaintiff's intestate, Samuel W. Berry, was nineteen years of age, resided near Lexington, Virginia, and, with his uncle, Charles Berry, had been visiting a relative in Tazewell, Virginia, whence he was making the return trip, when the accident occurred. He was riding in a two-door Plymouth car owned and driven by this uncle, Charles Berry. They were driving northward toward Princeton at the time the trolley car was approaching southward from Princeton. The actual impact occurred on the west side of the highway, being the left-hand side for the automobile. The left front corner of the trolley car struck the automobile in the right-hand door and dragged it some distance. Samuel W. Berry was killed instantly, and the driver of the car died about nine o'clock the same evening. The trolley car stopped about a car length beyond the west side of the pavement of the highway.

The speed of the automobile is estimated by various witnesses at from forty-five to sixty miles per hour, most of the witnesses fixing the speed at from fifty to fifty-five miles. The motorman says that his car was making the

customary speed of thirty-five miles an hour until he reduced the speed to twenty miles on nearing the crossing, but that he turned on full power when he started across, thus accelerating his speed to about the original thirty-five miles; while all of plaintiff's witnesses estimated the car's speed at thirty-five miles an hour and state that there was no reduction of speed at any time. The motorman testifies that he blew his whistle at the regular whistling point, which was distant about one hundred and sixty yards from the crossing, and blew it again as he started across, continuing the blast until the impact. Three of plaintiff's seven witnesses confirm the motorman on this point. Two say they do not recall hearing the whistle, and two are not interrogated on this point.

The defendant railway company maintained no signs at the crossing, the only signs being a small disc at the side of the highway and south of the crossing five hundred and forty-five feet, and a highway intersection sign about eighteen inches square two hundred and eighty-nine feet south of the crossing, both placed there and maintained by the State Highway Department.

The motorman testified that he looked for approaching vehicles, and that he did see the automobile immediately after it came around the curve in the highway five hundred and seventy feet from the crossing. No witness disputes this testimony. There is little conflict in the remaining evidence. Any disagreement as relates to the blowing of the whistle must be resolved as establishing the fact that the whistle was blown. The dispute as to whether the trolley car reduced its speed on approaching the crossing must be resolved in favor of the contention that there was no decrease. This, however, is probably immaterial, since the motorman concedes that the speed of the car was restored before the impact. On the question as to what, if anything, the motorist and motorman did in final effort to actually avoid the collision, all witnesses say that the motorist made no effort to decrease his speed until near the crossing, at which time he

swerved to the left and skidded his wheels, and that the skid marks show that the swerving and application of the brakes began at a distance of about thirty-one feet from the point of collision; the motorman says he turned off his power and applied his emergency brakes the instant it became apparent the automobile would not be brought under control. No witness says the car could have been stopped in time to avoid the automobile.

From the undisputed evidence of all the witnesses, it must be taken as conclusively established in this case that the driver of the automobile in which the decedent was riding at the time he was killed was grossly negligent, and that this driver's negligence proximately contributed to the decedent's death. There is, however, no evidence showing, or tending to show, that the deceased was guilty, either by omission or commission, of any negligence whatever. He is dead, and the only person in the car with him is also dead. We, therefore, have no evidence whatever showing what he did or did not do. In such cases, the law presumes that decedent was without fault, or, in other words, that he did all things required and refrained from all things forbidden, which might have made him negligent as a matter of law. *Pierce's Executrix* v. *B. & O. Railroad Company,* 99 W. Va. 313, 128 S. E. 832; *Miller* v. *Union Pacific Railroad Company,* 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed. 285. There is, therefore, no negligence on the part of the decedent that can defeat this action, and no negligence, however gross, on the part of the driver of the car in which he was riding, that can be imputed to him with that result. The question before the jury, therefore, narrowed down to the single inquiry whether or not the evidence showed that the defendant traction company was guilty of any act or negligence, which either caused or contributed proximately to the death of Samuel W. Berry.

There is thus no substantial conflict in the evidence on any controlling fact, and we have here a typical case for the exercise of the judgment of the trial court as to whether the evidence presented a case on which the jury might reasonably find a verdict for the plaintiff.

The court refused a motion to strike out the evidence of the plaintiff and direct a verdict at the close of the plaintiff's evidence, and refused a like motion when both plaintiff and defendant had rested; but, after the jury had returned a verdict for the plaintiff, on fuller consideration, set aside this verdict and awarded the defendant a new trial. This action of the court is the sole matter here now for review.

From an early date in this jurisdiction, it has been accepted as a rule that this Court will not disturb the order of a trial judge in setting aside a verdict and awarding a new trial, unless it appears from the record that the discretion vested in the trial court in that regard has been abused. The case of *Miller* v. *Insurance Company,* 12 W. Va. 116, 29 Am. Rep. 452, point four of the Syllabus says:

> "The court below may grant a new trial where the evidence is contradictory, and the verdict is against the weight of evidence; but in such case the power of the court to grant a new trial should be very cautiously exercised. And when in such case the court below grants a new trial, the opinion of the court below is entitled to peculiar respect; and generally the Appellate Court will not reverse the order of the court in such case granting a new trial."

This principle has been repeatedly and consistently reaffirmed to this date, a late expression of the court being found in the case of *Venturino* v. *Norfolk & Western Railway Company,* 113 W. Va. 341, 167 S. E. 868, which is an adoption verbatim of the syllabus in *Hagger* v. *Transport Co.,* 106 W. Va. 522, 146 S. E. 49, and reads as follows:

> "When the trial court sets aside a verdict and grants a new trial on conflicting evidence, its opinion is entitled to peculiar respect, and its order will not be reversed in the appellate court, unless plainly wrong."

In the case of *Rucker* v. *Fire Association,* 120 W. Va. 63, 196 S. E. 494, at page 71 Judge Fox collects and cites a

large number of Virginia and West Virginia cases declaring and applying this rule. It will be observed from these cases that this Court has consistently maintained toward the action of a trial judge in setting aside a verdict something of the high respect due to the verdict of a jury, and has required a clear showing of error before reversing. It, therefore, becomes our duty here to consider the evidence in some detail, in order to determine whether or not the trial court could reasonably have arrived at the conclusion that the evidence did not support the jury's verdict.

It is argued that the defendant was negligent in not maintaining proper signs at the crossing, and on the approaching highway; but the defendant had no duty, and, probably no right, to maintain such signs elsewhere than on its own property. There is nothing in the evidence to indicate that the customary crossing signs would have availed anything. The motorist did not take warning from the physical presence of a trolley car thirty-seven and one-half feet long actually entering upon the highway directly in front of his eyes, and it is not likely that he would have been deterred by mere warning signs at the point of crossing. "Negligence cannot be predicated on a failure to give a warning signal, so as to render a street railway company liable, where the person injured by the car had, in fact, knowledge of its approach in sufficient time to avoid the injury." *Blackwood v. Traction Co.,* 96 W. Va. 1, 122 S. E. 359.

It is charged that the speed of the trolley car was excessive; but a high rate of speed is not negligence *per se.* Consult: *State* v. *Washington, B. & A. Electric R. Co.,* 149 Md. 443, 131 Atl. 822; *Wood* v. *Wells* (Mo. Sup.), 270 S. W. 332; *Alabama Power Co.* v. *Brown,* 205 Ala. 167, 87 So. 608; *Skinner* v. *Tacoma Ry. & Power Co.,* 46 Wash. 122, 89 Pac. 488; *California Rendering Co.* v. *Railway Co.,* 205 Cal. 73, 269 Pac. 922; *Kuhns* v. *Conestoga Traction Co.,* 290 Pa. 303, 138 Atl. 838. It does not appear how the speed of the trolley car alone caused or contributed to the decedent's death. It is true that a slightly less speed would have prevented its arrival at the point of impact

at the fatal instant; but it is also true that an increased speed would have carried it beyond that point and made for the safety of the motorist. Speed only, therefore, in this case is not negligence in itself.

More aptly it is charged that the car was not held to such speed as to make it readily controllable in case of an unforeseen emergency; but it does not appear that any reasonable rate of speed would have made such control possible. The evidence indicates that if the speed had been only twenty miles an hour, the car could have been stopped within its length, but it is not shown that such a stopping would have saved the motorist.

It is argued, also, that when the motorman saw the motorist approaching five hundred feet away at a rapid speed, he should have refrained from entering the crossing. No such duty devolved upon him. The trolley car had the right of way. "The recognized legal status and reciprocal duties, each towards the other, of an interurban railway company and a traveler on a rural highway at a public grade crossing are materially different from those prevailing in a municipality, the rights of the traveler ordinarily being subordinate to those of the company, in that to the latter is accorded priority of passage, the reciprocal rights and duties of the respective parties in such case being predicated upon that basis." *Helvey* v. *Power Co.*, 84 W. Va. 16, 99 S. E. 180, Point 3, Syllabus. The statute requires the motorist to reduce his speed to fifteen miles per hour on approaching such a crossing. Code, 17-8-12. The motorman was entitled to assume that the driver of the automobile would observe this law, and was not required to act otherwise than on this assumption until it appeared that the motorist would not obey the law. See *Helvey* v. *Power Co., supra; Casto* v. *Transit Co.*, 120 W. Va. 676, 681, 200 S. E. 841, 843.

It is very plain from all the witnesses who testified on the point that, after it became evident that the automobile would not stop, it was impossible for the motorman to avoid the collision; and it does not appear from the testimony of any witness that after the critical position of the motorist became discernible the trolley car at

any reasonable rate of speed could have been stopped in time to save the decedent.

We are of opinion that the trial court could very reasonably have taken the view that the verdict was not supported by the evidence, and accordingly we are not at liberty to interfere with the action of that court in setting aside the verdict and awarding the defendant a new trial.

The judgment of the circuit court is, therefore, affirmed.

*Affirmed.*