## BALTIMORE & O. R. CO. v. GREEN.
### No. 5050.

Circuit Court of Appeals, Fourth Circuit.
May 29, 1943.

George S. Wallace, of Huntington, W. Va., for appellant.

Selden S. McNeer, of Huntington, W. Va. (L. E. Woods, Jr. and Campbell & McNeer, all of Huntington, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a railroad crossing collision case. Plaintiff is the administratrix of her deceased husband, Lonnie L. Green, who was riding at the time in an automobile owned and driven by a Dr. Graham, and who with Dr. Graham was killed in the collision. The defendant is the Baltimore & Ohio Railroad Company. There was verdict and judgment for the plaintiff and defendant has appealed. Two questions are raised by the appeal: (1) whether there was error in submitting to the jury the question of defendant's negligence, and (2) whether there was error in charging the jury that there was no evidence of contributory negligence on the part of plaintiff's intestate.

The collision occurred about noon on July 25, 1942 at the Seventh Street crossing of the defendant's Parkersburg-Kenova main line track in the City of Huntington, West Virginia. Decedent was riding with Dr. Graham in the latter's automobile going north on Seventh Street, when the automobile was struck by an eastbound passenger train running at a speed of approximately 31 miles per hour. The evidence leaves no doubt that the whistle of the locomotive was blown for the crossing and that the bell was ringing; but the view of the track towards the west, to a person approaching it from the south, was obstructed by trees and shrubbery except for a distance of only a few feet from the track. As stated by one witness, "you couldn't see it (the locomotive) until it just popped right out into the street." The crossing was of black asphalt, which was in contrast with the white concrete paving of the remainder of the street and was visible from the south for a considerable distance, although the rails at the crossing were sunk beneath the street level. There was no watchman at the crossing and no electric bell or electric flashlight had been provided to give warning signals of the approach of trains, in accordance with the ordinance of the City of Huntington, which provided:

"Warning Signals at Crossings:

"At every railroad crossing in the city the railroad operating over the same shall be required to place a warning consisting of an electric bell, or watchman, or electric flashlight, which shall operate and give warning to travelers upon the highway on the approach of any train, engine or cars".

Dr. Graham, the driver of the car in the collision, was not a resident of Huntington, but of a town in Virginia. He was an uncle of decedent's wife and was visiting in decedent's home on the morning of the collision. He intended to return to his home in Virginia that day and to take decedent with him in his car to a nearby town, where decedent's mother lived. One of the tires of his car needed repairing and he had gone to a service station to have it repaired and was returning from the service station to decedent's home when the collision occurred. Decedent had gone with him to the service station to show him the way, and was presumably directing his course as he drove to and from the service station, as Dr. Graham was a stranger in the city. Decedent lived within a city block of the crossing and was familiar with it, but Dr. Graham was not. The car was being driven at a speed approximately same as that of the train, i. e. at around 30 miles per hour, and a witness who saw it about 150 feet south of the crossing testified that decedent and Dr. Graham were talking as it passed him. There is evidence that it did not slow up on approaching the crossing and was on the crossing when struck by the train.

We think that the evidence of negligence on the part of defendant was clearly sufficient to take the case to the jury on that issue. The speed of 31 miles per hour at a "blind" crossing on one of the traveled streets of the city was certainly evidence of negligence for the jury to consider, apart from the failure to provide the watchman or signals required by the city ordinance; and, when to this is added the failure to comply with the provisions of the ordinance, there can be no question as to its sufficiency.

It is elementary that a railroad company is required to exercise greater care at a crossing in a city than in the country, where the chance of accident is less. Cavendish v. Chesapeake & O. R. Co., 95 W.Va. 490, 498, 121 S.E. 498, 502; Norfolk & W. R. Co. v. Burge, 84 Va. 63, 4 S.E. 21. And it was a question

for the jury to consider whether the operation of the train at a speed of 31 miles per hour over a blind crossing at which no warning signals, other than the crossing sign, had been provided did not constitute negligence. Cf. Morris' Adm'x v. Baltimore & O. R. Co., 107 W.Va. 97, 107, 147 S.E. 547, 551; Norfolk & W. R. Co. v. Holbrook, 6 Cir., 27 F.2d 326.

 It is likewise well settled in West Virginia that violation of a city ordinance, which has the force of a statute, is prima facie evidence of negligence where it is the proximate cause of the injury complained of. Meyn v. Dulaney-Miller Auto Co., 118 W.Va. 545, 191 S.E. 558; Oldfield v. Woodall, 113 W.Va. 35, 166 S.E. 691; Tarr v. Keller Lumber & Const. Co., 106 W.Va. 99, 144 S.E. 881, 60 A.L.R. 570. We cannot agree with defendant's contention that the terms of the ordinance were not mandatory, or that any further action on the part of city officials was necessary to impose upon the railroad company the duty of providing at crossings within the city the warning signals which it required. No authority is cited in support of the interpretation for which defendant contends, and we know of none. It certainly could not have been the intention of the legislative body of the city to confer a discretion on the law enforcement officers with respect to requiring compliance with the ordinance when it expressly provided that its requirement should apply to "every railroad crossing in the city".

██ Equally without merit is the contention that failure to comply with the ordinance cannot be considered a proximate cause of the collision. If a crossing signal with flashing lights and a ringing bell had been operating at the crossing, as the ordinance required, it is hardly probable that Dr. Graham would have driven in front of the approaching train. The failure to provide such signal, therefore, might well have been found by the jury to be, not a mere condition attending the collision, but the producing cause thereof without which it would not have occurred. As said by the Supreme Court of Appeals of West Virginia in Norman v. Virginia-Pocahontas Coal Co., 68 W.Va. 405, 69 S.E. 857, 858, 31 L.R.A.,N.S., 504, "If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the non-observance of the law." See also 38 Am.Jur. 838.

The case is not at all like Fleming, Adm'r, v. McMillan, W.Va., 26 S.E.2d 8, relied on by defendant, where a motorist drove into a trolley car and the court said that there was nothing in the evidence to suggest that the presence of an ordinary crossing sign would have deterred him. That case falls under the rule that "if the injury would have occurred regardless of the violation of the statute, the defendant is not liable therefor." 38 Am.Jur. 839. On like principle, the case of Jones v. Virginian R. Co., 115 W.Va. 665, 177 S.E. 621, is to be distinguished. There the railway had provided signal lights and a crossing gong which were operating at the time of the accident, and it was held that, under such circumstances, the failure of the railway to cause the word "stop" to be painted on the street, as required by ordinance, could not be held the proximate cause of the accident.

Defendant contends that the question of decedent's contributory negligence should have been submitted to the jury on two grounds: (1) that the negligence of Dr. Graham, the driver of the car, should be imputed to decedent on the theory that he and decedent were engaged in a joint enterprise, and (2) that there was evidence that decedent himself was guilty of contributory negligence.

 There was unquestionably evidence upon which the jury would have been justified in finding that Dr. Graham was guilty of negligence, but we do not think that, under the law prevailing in West Virginia, it can be imputed to decedent. Decedent was a mere guest in the car, not a participant in a joint enterprise. Dr. Graham was to take him in the car to a nearby town to see his mother, as a mere courtesy; and as a courtesy he rode with Dr. Graham to direct him to the service station to have the tire repaired. There was nothing in any of this which tended to establish such a joint enterprise on the part of the two as would render each liable for the acts and defaults of the other or justify imputing to one the other's negligence. As said in A. L. I. Restatement of Torts, § 491, comment c, "Therefore, if there is no prearrangement for a substantial sharing of the expenses

of the trip, as to which see Comment G, the trip is not a joint enterprise merely because it is made at the request of the plaintiff, because he and his host have a common destination, because the destination or any change therein is to be determined by mutual agreement, because it is arranged that the guest is to drive alternatively with his host, or even because they are going to the common destination to accomplish a purpose in which they have a common but not a business interest. No one of these facts, nor indeed all of them together, is sufficient to justify a jury or other trier of fact in finding that the trip was a joint enterprise." The law applicable in West Virginia was well stated in the comparatively recent case of Horchler v. Van Zandt, 120 W.Va. 452, 199 S.E. 65, 67, as follows: "Since the rise of multitudinous automobile cases there has been frequent effort to invoke the joint-adventure doctrine in order to avoid the general rule that the negligence of an, automobile operator is not usually to be imputed to a passenger. Jones v. Virginian Railway Co., 115 W.Va. 665, 177 S.E. 621. * * * In Coleman v. Bent, supra, is a terse and forceful statement which we approve as applying the correct factual test to passenger cases where effort is made to invoke the doctrine under discussion. The court said (p. 226): 'We are of opinion that the doctrine of joint adventure, as applied to the operation of a vehicle owned by one of the occupants, ought to be restricted to cases where the common right to control its operation, and the correlative common responsibility for negligence in its operation, is either clearly apparent from the agreement of the parties, or is a logical conclusion from the facts found by the trier.' At an earlier point in the same opinion is this statement: 'What sort of an arrangement will make the parties to it joint adventurers in the operation of the vehicle in which all are riding is well settled. The typical case is where two or more jointly hire a vehicle for their common purpose and agree that one of their number shall drive it. In such a case the possession of the vehicle is joint and each has an equal right to control its operation.' "

■ And we can find in the record no evidence of negligence on the part of the decedent. It is said that he knew the location of the railway crossing and should have told Dr. Graham to look out for it;

but there is no evidence that he did not do so. It is argued that he should have heard the bell and whistle of the locomotive and warned Dr. Graham of its approach; but there is no evidence that he did not do this. Both he and Dr. Graham are dead and there is no evidence as to what took place between them immediately preceding the collision. He may have heard the train shortly before reaching the crossing and warned Dr. Graham, and the latter may have thought there was sufficient time to get across the track. The presumption is that he exercised due care for his own safety, and there is nothing that we can find in the record to rebut that presumption. One West Virginia decision would seem to indicate that decedent was chargeable with negligence under the circumstances (Jackson v. Chesapeake & O. R. Co., 110 W.Va. 568, 573, 159 S.E. 517); but the most recent expression in that state, in a case practically "on all fours" with the case at bar, is clearly to the contrary. McClaugherty v. Tri-City Traction Co., 123 W.Va. 112, 14 S.E.2d 432, 434. In the latter case the court said: "From the undisputed evidence of all the witnesses, it must be taken as conclusively established in this case that the driver of the automobile in which the decedent was riding at the time he was killed was grossly negligent, and that this driver's negligence proximately contributed to the decedent's death. There is, however, no evidence showing, or tending to show, that the deceased was guilty, either by omission or commission, of any negligence whatever. He is dead, and the only person in the car with him is also dead. We, therefore, have no evidence whatever showing what he did or did not do. In such cases, the law presumes that decedent was without fault, or, in other words, that he did all things required and refrained from all things forbidden, which might have made him negligent as a matter of law. Pierce's Executrix v. Baltimore & O. R. Co., 99 W.Va. 313, 128 S.E. 832; Miller v. Union Pacific Railroad Company, 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285. There is, therefore, no negligence on the part of the decedent that can defeat this action, and no negligence, however gross, on the part of the driver of the car in which he was riding, that can be imputed to him with that result."

Directly in point, too, is the case of Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 173, 78 L.Ed. 285, which was cited with approval by the West Vir-

ginia court in the McClaugherty case in the passage above quoted. In that case a husband and wife, who were riding in a car together with the husband driving, were killed as the result of a crossing accident. Both were familiar with the crossing and both had ample opportunity to observe the approaching train. In holding that recovery for the death of the husband was barred by contributory negligence but that recovery for the wife's death was not, the court said:

"In the present case, as already appears, the burden was sustained as to the husband. It was not sustained as to the wife. As to her, there is an entire absence of evidence on the point. Whatever duty rested upon her under the circumstances, for aught that appears to the contrary, may have been fully discharged. It properly cannot be said from anything shown by the record before us that she did not maintain a careful lookout for the train, or that, if aware of its approach, she did not warn her husband or urge him to stop before entering upon the crossing. Want of due care for her own safety must be proved; it cannot be presumed. The presumption is the other way. Texas & Pacific R. Co. v. Gentry, 163 U.S. 353, 366, 16 S.Ct. 1104, 41 L.Ed. 186; Baltimore & Potomac R. Co. v. Landrigan, 191 U.S. 461, 473, 474, 24 S.Ct. 137, 48 L.Ed. 262; Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 356, 50 S.Ct. 281, 74 L.Ed. 896. If, as here, there be no evidence which speaks one way or the other with respect to contributory negligence of the person killed, it is presumed that there was no such negligence. Looney v. Metropolitan R. Co. 200 U.S. 480, 488, 26 S.Ct. 303, 50 L.Ed. 564.

"Here the wife was not in control of the movement of the automobile. She could only note the danger, warn her husband, and urge him to stop. She may have done so, and he, misjudging the situation or taking the chance, have gone forward nevertheless. Or she may have seen the approaching train, observed that her husband was also aware of the fact and, relying upon her knowledge of his habits and character, trusted him, with good reason, until it became too late to interfere, to do whatever was necessary to avoid the danger."

This court dealt with the case of an occupant of a bus killed in a crossing accident in Caddell v. Powell, 4 Cir., 70 F.2d

123, 125, where we said: "cases can be imagined where one riding in a motor vehicle and not directing or assisting in the driving would be guilty of contributory negligence, as where he sees that the driver is ignorant of impending danger and fails to warn him, or where he acquiesces in, or fails to protest against, reckless conduct of the driver; but no rule of law or of common sense requires the passenger in an automobile to assume in every case that the driver will act with negligence and take upon himself the role of 'back seat' driver. In ordinary cases a motor vehicle will be driven with greater safety to all parties concerned if the passengers will let the driver alone. See Miller v. Union Pac. R. Co., supra, and Southern Pac. Co. v. Wright, [9 Cir.], 248 F. 261, 264; Pyle v. Clark, C.C., 75 F. 644."

There was no error and the judgment appealed from will be affirmed.

Affirmed.