THOMAS, Justice.
The appellant brought an action against the appellees, the issues were tried before a jury which found for the appellees and the judge placed his imprimatur on the verdict by denying a motion for a new trial and entering a judgment that the appellant take nothing by his complaint.
The appellant charged that his motorcar was demolished and he was injured in a collision with appellees’ train at the intersection of their railway and Okeechobee Road in Hialeah. At such time, so it was alleged, an ordinance was in effect making it unlawful for appellees to operate trains across Okeechobee Road unless they maintained (1) a watchman there “constantly between the hours designated as being necessary by the Mayor” to warn travelers of approaching trains, or (2) installed a suitable electric safety device, or (3) gates for that purpose. The mayor had, according to the averments, notified,the appel-lees in writing that a watchman would be required between six in the morning and six in the evening.
Notwithstanding the ordinance, the pleader continued, the appellees “wilfully or negligently failed or refused” either to place a watchman at the crossing, or to provide safety devices, and that as a direct and proximate result the appellant sustained damage to his property and injury to himself. This is the substance of the first count.
In the second count, it was averred, in general language, that the appellees negligently “drove or caused to be driven a railroad train against the plaintiff” as a proximate result of which the appellant suffered the injury and loss.
No watchman was present when the collision occurred, about five-thirty in the' afternoon, and no gates or signalling devices had been installed.
As we understand the positions of the appellant and appellees, a decision of this controversy depends, in part, upon the authority intended to be delegated by the city council to the mayor and, the effect upon the mayor’s written order of his subsequent conversation with appellees’ superintendent. The mayor had written the terminal superintendent of the railroad company calling his attention to the ordinance and notifying him to post immediately a watchman at this crossing between the hours of six in the morning and six in the evening or to install automatic signals or gates. The company had complied with the request by placing a watchman on duty. Later the mayor, in a telephonic conversation with the superintendent said, according to the former’s testimony: “I did tell him that Okeechobee crossing, being it wasn’t traveled very highly and could be seen, that they didn’t need to walk a man across the street there. That was the conversation.” All this occurred before the mishap.
Parenthetically, it was shown that the track at this intersection was used about six times daily.
The appellant strenuously objected to the introduction of the mayor’s testimony about his apparent attempt to countermand the order he had given pursuant to the ordinance but the judge admitted the testimony. At the conference of the attorneys and the judge about charges to be given, the appellant requested a charge that the ordinance was in effect but his request was refused. He assigned as error both the admission of the evidence and the rejection of the charge. We think this was reversible error.
We do not pass upon the validity of the ordinance because it was never attacked, but we do undertake to decide how the mayor’s order could have been affected by his subsequent conversation with the superintendent.
It is quite clear that the council by enacting the ordinance had required that certain streets,- including the one, in question, be provided at railroad crossings either with automatic safety contrivances or watchmen. Obviously the mayor had no discretion whatever to eliminate any of the crossings from the effect of the law. He had authority only to fix the hours in the event watchmen were used instead of *145 mechanical apparatuses. He exercised his authority, then, supposedly, undertook casually to counteract his order by telling the superintendent that it wasn’t necessary to “walk a man across.” But by no construction of the ordinance was the mayor delegated the authority to command the railroad company to have a crewman or other employee precede trains passing over the highway or streets.
When the jurors were permitted to hear about the conversation between the mayor and the superintendent and when the charge that would have, in effect, explained to them that the requirements of the ordinance and the mayor’s order had not been affected by the conversation, was refused, reversible error crept into the case. The jury, possessed of this information, could easily have been lead to believe that the ordinance, which was the basis of the first count, was rendered impotent by the mayor’s unauthorized representation to the superintendent.
The collision happened' on a clear day at a place that was thoroughly familiar to the appellant. He was traveling at the rate of not more than forty-five miles per hour. The lawful speed limit north of the crossing was forty-five miles per hour and south of it thirty miles per hour. Inasmuch as he was proceeding south and was stopped by the collision at a point where the speed limit was reduced to thirty miles an hour, he could not be said to have been violating the ordinance regulating speed.
The train, consisting of more than forty cars, was backing slowly at a rate of not more than six miles an hour. Even so, when the train and vehicle met beyond the center of the road, the car was pushed fifty-five feet down the track before the train stopped.
The appellant seems not to have been at fault and it may be assumed that the appel-lees were not at fault so far as giving audible signals was concerned. But it is plain that there was no attempt to comply with the ordinance that was - imposed on the ap-pellees to maintain “constantly” a person to warn travelers on the highway if a train was about to cross. We cannot assume that this accident would have happened had appellant been given the opportunity to observe a watchman at the crossing warning travelers of the train’s approach. Cf. Baltimore & O. R. Co. v. Green, 4 Cir., 1943, 136 F.2d 88.
We do not intimate that a violation of this ordinance would, standing alone, be sufficient basis for a verdict for the appellant, but certainly the character of the violation was a matter to be considered by the jury in deciding whether there was negligence on the part of the railroad which contributed to the accident. By admitting the testimony and rejecting the charge, the jurors could' readily have concluded that there was actually no violation of an ordinance.
In the circumstances shown in the record, we cannot presume that the collision was caused solely by the appellant’s negligence, and we cannot conclude that the question of applicability of the ordinance was purely one for the jury. Had it been determined as a matter of law, by a ruling rejecting the mayor’s testimony of the conversation, that the ordinance requiring safety measures could not have been abrogated by his casual expressions and that factor had been eliminated from consideration by the jury, the verdict might well have been different.
We are convinced that the question of the effectiveness of the ordinance was one of law for the court to decide and that by submitting the case to the jury with the improper testimony before them, the question of law became tangled with the questions of fact the jurors were to decide and confused them in arriving at a verdict. A careful study of all the charges convinces us that the error was not cured. Cf. Seaboard Air Line Ry. Co. v. Kay, 73 Fla. 554, 74 So. 523; Peaney v. Davis, 26 Ohio App. 414, 160 N.E. 486.
Reversed with directions to grant a new trial.
ROBERTS, C. J., and HOBSON and DREW, JJ., concur.