GLEASON C. KESNER, *Administrator of the Estate of Dianna Lee Kesner, Deceased*

*v.*

D. H. TRENTON, ETC., *et al.*

*and*

GLEASON C. KESNER, *Administrator of the Estate of Carol Ann Kesner, Deceased*

*v.*

D. H. TRENTON, *etc., et al.*

(No. 13296)

Decided July 15, 1975.

998

*John M. Hamilton, John G. VanMeter, Ralph J. Bean, Catsonis & Linkous, Leo Catsonis* for appellants.

*James E. Ansel* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Grant County which set aside a jury verdict and awarded plaintiff a new trial in these two consolidated wrongful death actions on the ground that the verdicts rendered in favor of the plaintiff for funeral expenses only were inadequate.

Plaintiff's decedents, Dianna and Carol Kesner, drowned at VEPCO lake in Grant County, West Virginia, on July 7, 1968. On that Sunday Gleason Kesner, the plaintiff administrator, took his family to the lake for the purpose of a family outing. The defendants below and appellants here operated a boating marina on the lake. As lessees of Virginia Electric Power Company, they offered at their establishment rental spaces for private boats, camping spots with electricity, water and toilet facilities and boat sales and rentals to the general public. Coincident with these commercial enterprises, the marina operation also provided, without charge to

the general public, areas for picnicking and swimming in the waters adjacent to the defendants' boat dock and marina.

The Kesner family visited the lake so that, among other things, Mr. Kesner, the plaintiff, could rent a boat for the purpose of going to the mouth of Stoney River for fishing. Upon arrival at the marina area, the family had a picnic lunch. The Kesner girls, in the company of their sisters and two friends, decided to go wading in the lake within twenty minutes to one-half hour after they had eaten lunch. At approximately the same time, their father was on the boat dock awaiting his turn to rent a boat from the operator of the marina. Shortly after the girls entered the water they slipped or stepped into a culvert or excavation which had been dug from the lake bottom for the purpose of channeling water to a run-off culvert at the dam site on the lake. This culvert was approximately ten feet deep and dropped off precipitously from an area which was otherwise only "knee deep." Evidence disclosed that the plaintiff's decedents were fifteen and sixteen years old, were less than five feet in height and were non-swimmers. Neither they nor anyone in the Kesner party was aware of the existence or location of the hidden excavation or culvert. There were no marker buoys, signs or other indicators alluding to the existence of the culvert or to the hazards of swimming in the area; however, defendant Arthur Trenton revealed that he had roped-off the area previously in order to restrict swimmers or waders from proceeding into the area of potential danger. Apparently, boats using the area had cut or destroyed the nylon rope one or two weeks prior to the accident, but Trenton had not replaced any type of markers to warn of the hazards at the time of the drownings.

The bodies of the two Kesner girls were recovered some twenty-five to thirty-five minutes after they fell into the excavation. Unfortunately, efforts to resuscitate the victims were unsuccessful.

Appellee stipulated in his brief that the three questions set forth in appellants' brief constituted a fair statement of the issues involved in this case:

"(1) Is the form of the verdict prepared by the Court and submitted to the jury, which included parenthetically the maximum damages permitted by Statute, prejudicial to the Defendant in a wrongful death action?

"(2) Is Article 25, Chapter 19, of the West Virginia Code, which limits a landowner's liability to invitees, applicable to the facts of this case?

"(3) Is it mandatory upon a jury to assess some damage under the wrongful death portion of Chapter 55, Article 7, Section 6 of the Code if the jury allows recovery for reasonable funeral and burial expenses under another portion of the same section?"

As regards the first issue, the plaintiff had made no claim in his two actions for wrongful death for an award based upon pecuniary loss. His claims were limited to funeral expenses in the amount of $858.90 for the death of each child and for damages for the wrongful death of each child which, by statute, is not permitted to exceed the sum of $10,000.00.

At the conclusion of the trial, the trial court submitted a verdict form to the jury as follows:

"We, the jury, find for the plaintiff, administrator of the Estate of Carol Ann Kesner and assess damages at $___ (not to exceed $10,000.00) and funeral expenses of $858.90, or a total of $___."

An identical form was submitted for Mr. Kesner's death claim involving the Dianna Lee Kesner Estate. The appellants contend that the language contained in the parenthesis in the verdict form, "(not to exceed $10,000.00)", unduly impressed upon the minds of the jurors the maximum amount which could be awarded and thus invaded the province of the jury. The appellee, on the other hand, asserts that the jury verdict form is correct and that the appellants suffered no prejudice in

any event in that the jury limited its findings to "$ No (not to exceed $10,000.00) and funeral expenses of $858.90" for each Kesner girl.

The appellee's point is well taken. In light of the jury's very limited verdicts it is obvious the appellants suffered no actual prejudice through the use of this phraseology in the verdict forms. Likewise, the forms cannot be assailed as being suggestive to the jury that it find for the plaintiff when it would otherwise not do so, since the jury was also given forms to be used if it found for the defendants. Nevertheless, the defendants indirectly question whether the submission of the verdict forms suggests that the jury award damages not proven by the evidence. This contention is without merit in the context of a wrongful death action when the amount indicated ("not to exceed $10,000.00") follows the prescription of the statute, *W. Va. Code* 1931, 55-7-6, as amended. It is well settled in this jurisdiction that where the jury finds the defendant liable in a wrongful death action, it has absolute discretion, without regard to proof of actual damages, pecuniary loss and the like, to make any award it deems "fair and just, not exceeding ten thousand dollars." *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76 (1944); *Hawkins v. Nuttallburg Coal & Coke Co.*, 66 W. Va. 415, 66 S.E. 520 (1909); *Kelley v. Ohio River R. Co.*, 58 W. Va. 216, 52 S.E. 520 (1905); *Sample v. Consolidated Light & Ry. Co.*, 50 W. Va. 472, 40 S.E. 597 (1901); *Couch v. Chesapeake & O. Ry. Co.*, 45 W. Va. 51, 30 S.E. 147 (1898); *Turner v. Norfolk & W. R. Co.*, 40 W. Va. 675, 22 S.E. 83 (1895).

With respect to the second issue, plaintiff proceeded at trial on the theory that he and his family were business invitees under the common law and consequently, that the defendants owed the plaintiff's decedents the duty of ordinary care. On the other hand, the defendants, by motions for directed verdicts at the close of plaintiff's evidence and at the close of all the evidence, and by proffered instructions, asserted that by statute, *W. Va. Code* 19-25-1, *et. seq.*, as amended, the plaintiffs were not owed the duty of ordinary care in that such statute

limits the liability of landowners who, free of charge, permit their land to be used for recreational purposes.

This statute, which was enacted in 1965 and which has not been previously interpreted by this Court, provides *inter alia*:

> "Subject to the provisions of section four [§ 19-25-4] of this article, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous or hazardous condition, use, structure, or activity on such premises to persons entering for such purposes.

> "Subject to the provisions of section four of this article, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby (a) extend any assurance that the premises are safe for any purpose, or (b) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for an injury to person or property caused by an act or omission of such persons." [19-25-2]

*W. Va. Code* 1931, 19-25-4, as amended, recognizes two exceptions wherein a landowner may be held liable for acts or omissions proximately resulting in harm to others: (1) if he wilfully or maliciously fails to warn against a dangerous or hazardous condition, use, structure or activity and (2) if he makes a charge to a person or persons who enter or go upon the land. *Section* 5 of the statute, *id.*, includes within its purview of the word, "owner," tenants or lessees such as the marina operators. A "charge" is defined as "the amount of money asked in return for an invitation to enter or go upon the land." *Id.*

The trial court determined that the above statutory provisions were not applicable to the facts of the case, and consequently instructed the jury on the theory that plaintiffs were owed ordinary care by the landowner in their capacity as invitees. This Court in *Smith v. Sunday*

*Creek Co.,* 74 W. Va. 606, 82 S.E. 608 (1914), recognized a landowner's common-law duty to an invitee when it stated that "... where the person injured was induced, allured or enticed by the owner to enter upon the premises, or was thereupon by his express or implied invitation, a higher degree of care is imposed to have and to keep the premises reasonably safe." *Id.* at 611. The Court in *Smith, supra,* also explained that:

> "An invitation to enter upon premises, within the meaning of the law of negligence, will be implied where entry thereon at the instance of the owner is in connection with his business or for his benefit. *Railroad v. O'Malley,* 107 Ill.App. 600 (p. 609)." *Syllabus* point 2., *id.*

More specifically, *see, Morgan v. Price,* 151 W. Va. 158, 150 S.E.2d 897 (1966), wherein this Court held that a boat dock owner and operator owed a woman, who was injured when she fell because of an alleged defect in a board on the owner's boat dock, the duty of exercising ordinary care in maintaining his premises in a reasonably safe condition.

As indicated *W. Va. Code* 1931, 19-25-4, as amended, does not limit the landowner's common-law responsibility where a landowner or a lessee "charges" a person to go on the land. Although technically in this case there was not an "amount of money asked in return for an invitation to enter or go upon the land," there existed such a "charge" in effect that *W. Va. Code* 1931, 19-25-4 should apply. The marina was open to the public; a sign on the main road nearby described how to get to it. Furthermore, the marina was a money-making business; defendant Arthur Trenton admitted that he received his income from the operation of the marina. The marina sold and serviced some boats and parts and rented many boats; in fact, the plaintiff was waiting to rent a boat to go fishing when the tragic accident occurred.

This liberal interpretation of the term "charge" in *W. Va. Code,* 1931, 19-25-4 is consistent with the Wisconsin Supreme Court's construction of a key phrase, "valuable consideration", contained in a similar statute in that

jurisdiction which limits a landowner's liability. *See,* Wis. Stat. Ann. § 29.68 (1963). The commentator in "Torts—Statutes—Liability of Landowner to Persons Entering For Recreational Purposes," 1964 Wis. L.Rev. 705 (1964) explains that "[a] recreational entrant injured as a result of the landowner's negligence must show that he paid 'valuable consideration' to the landowner for the privilege of entry in order to recover." *Id.* at 707. In *Copeland v. Larson,* 46 Wis.2d 337, 174 N.W.2d 745 (1970) where a minor swimmer brought an action against the owners of a resort for injuries sustained while attempting to dive from a pier at a resort, the court held that:

> ". . . [T]he benefit the defendants expected to receive from increased sales in their store by creating prospective customers through permitting the use of their swimming facilities and the mutuality of interest of the swimmers and the defendants was sufficient 'valuable consideration' for the general implied permission to the public to use the bathing facilities." *Id.* at 751.

Compare, *Garfield v. United States,* 297 F. Supp. 891 (W.D. Wis. 1969); *see, Magerowski v. Standard Oil Co.,* 274 F.Supp. 246 (W.D. Mich. S.D. 1967) and *Heider v. Michigan Sugar Co.,* 375 Mich. 490, 134 N.W.2d 637, cert granted 383 U.S. 905, 86 S. Ct. 892, 15 L. Ed. 2d 661, cert denied 385 U.S. 362, 87 S. Ct. 532, 17 L. Ed. 2d 427 (1965).

Similarly, the defendants in this case reasonably could have expected to attract prospective customers and thus, to increase sales and rentals at the marina by allowing people to swim in the lake at no cost. This expectation, which was nearly fulfilled since Mr. Kesner was about to rent a boat to go fishing, was a sufficient "charge" within the meaning of *W. Va. Code* 1931, 19-25-4, as amended,thereby negating the limitations of *Section* 2 and leaving the defendants with the common-law duty of providing ordinary care to business invitees such as the Kesners. Consequently, we are of the opinion that the trial court did not err in refusing defendants' motions for directed verdicts or in refusing to give defendants' proffered instructions which would have limited

the marina operators' duty of care toward plaintiff's decedents.

The third and final issue of this appeal presents a factual situation of first impression in this jurisdiction. Although the jury resolved the question of liability in favor of the plaintiff and properly awarded separate damages for funeral expenses, it chose to award "$ No" damages for the wrongful deaths. In his written opinion the trial judge spoke of these verdicts as being inconsistent and awarded the plaintiff new trials on the ground that the verdicts were inadequate as a matter of law.

The order reflecting the opinion of the trial court and awarding the plaintiff new trials on all issues was appealed under the authority of *W. Va. Code* 1931, 58-5-1(i), as amended. *See, Parsons v. McCoy*, W. Va., 202 S.E.2d 632 (1973); *Hundley v. Martinez*, 151 W. Va. 977, 158 S.E.2d 159 (1967).

An order of a trial court awarding a new trial is entitled to high respect in this Court and will not be lightly reversed. As recognized and applied in *Young v. Duffield*, 152 W. Va. 283, 162 S.E.2d 285 (1968):

> "The judgment of a trial court in setting aside a verdict and awarding a new trial is entitled to peculiar weight and its action in this respect will not be disturbed on appeal unless plainly unwarranted." *Syllabus* point 3., *id.*

*Accord: Rollins v. Daraban*, 145 W. Va. 178, 113 S.E.2d 369 (1960); *Vaughan v. Memorial Hospital*, 103 W. Va. 156, 136 S.E. 837 (1927). The ultimate test on appeal is whether the trial court's discretion in supervising the verdicts of juries so as to prevent a miscarriage of justice has been abused. *Young v. Duffield, supra,* at page 288 of the West Virginia Report; *McClaugherty v. Tri-City Traction Company*, 123 W. Va. 112, 14 S.E.2d 432 (1941).

Nevertheless, a court cannot be permitted to violate a positive rule of law under the guise of exercise of discretion. In that regard, the appellants contend that the trial court is forbidden to set aside a verdict in a wrong-

ful death action on the ground of inadequacy alone. We are in complete agreement with that premise. This Court has been definite and consistent in its view to limit review of jury verdicts in death cases. As noted in the discussion of the first issue, *supra*, a long line of decisions, considering both alleged excessiveness and inadequacy of jury verdicts, recognize that *W. Va. Code* 1931, 55-7-6, as amended, wisely leaves it to the jury to say what the damages shall be. *Sample v. Consolidated Light & Ry. Co.*, 50 W. Va. 472, 40 S.E. 597 (1901). The Court recognized in the case of *Couch v. Chesapeake & O. Ry. Co.*, 45 W. Va. 51, 30 S.E. 147 (1898), that the jury's enlightened conscience is the sole measure of damages. Furthermore, in the case of *Kelley v. Ohio River R. Co.*, 58 W. Va. 216, 52 S.E. 520 (1905), the Court stated that "the statute gives unlimited discretion to the amount of damages to the jury within the limit of ten thousand dollars." *Id.* at 223.

There are only two cases in West Virginia which have directly passed upon the ability of a trial court or reviewing court to set aside a verdict in a wrongful death action because of inadequacy. In the case of *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76 (1944), this Court refused to disturb a jury verdict in favor of a plaintiff in the amount of $1,000.00 on the ground of inadequacy, although there was significant evidence of misconduct on the part of a juror who resided in the home of one of defendant's attorneys during the trial of the case. The Court held:

> "In an action for death by wrongful act, the jury is the arbiter of the amount of damage, and its findings will not be set aside for the reason that the recovery is inadequate, unless it can be seen that the jury was misled or was motivated by passion, prejudice, partiality or corruption." *Syllabus* point 2., *id.*

Directly on point, the Court concluded that "[T]he meagerness of the verdict alone is not a sufficient reason to set it aside," *id.* at 763, citing *Hawkins v. Nuttallburg Coal & Coke Co.*, 66 W. Va. 415, 66 S.E. 520 (1909).

In the *Hawkins* decision, this Court held a verdict of $500.00 for a wrongful death to be unassailable by the trial court on the grounds of inadequacy. The Court further held that the trial court committed error in setting aside the verdict and stated:

> "The jury is generally in actions for tort the judge of the amount of damages. ... In their assessment in tort cases there is no fixed measure as in cases of contract. This is the case in actions generally. [cite omitted] But in the case of an action under the statute for the death of a person this is peculiarly the case. Our decisions go to the effect that the jury, in such cases, is, under the statute giving the action, *absolutely the judge of the amount of the damages*, and its finding cannot be disturbed unless the court can see that the jury was actuated by passion, prejudice or corruption." *Id.* at 416. (Emphasis supplied).

Appellants also contend that the limited verdict reached by the jury should be considered a verdict for the defendant perversely expressed. Yet, the principle of the verdict for the defendant "perversely expressed" is simply a restatement of the mere inadequacy rule. The tests appear to be the same. Judge Browning expressed the rule of this jurisdiction in a personal injury case, *Coakley v. Marple*, 152 W. Va. 68, 159 S.E.2d 378 (1968):

> "...[A] verdict of the jury for the plaintiff for *nominal* damages will not be set aside upon motion of the plaintiff upon the ground of inadequacy as such finding of fact must be considered as a verdict for the defendant perversely expressed and such verdict should not be disturbed where the evidence is such that if a verdict had been returned for the defendant the trial court could not have disturbed the verdict unless there is some fact or circumstance other than the smallness of the verdict which warrants the inference that the jury was actuated by partiality, sympathy, passion, prejudice or corruption or other improper influences acting against the plaintiff." *Id.* at 75.

*See also, Shields v. Church Brothers, Inc.,* W. Va., 193 S.E.2d 151 (1972).

Thus it appears clear in West Virginia that mere inadequacy is insufficient to set aside a jury verdict, whether one approaches the matter on general principles applicable to wrongful death awards or on the "perversely expressed" theory. With either approach, inadequacy must be coupled with error or jurors' misconduct before a court is justified in entering the province of the jury.

In answer to the third issue, a jury is not required to award any dollar amount coincident with a wrongful death finding. Where the case has been properly submitted and the jury has not been shown to have been actuated by passion, partiality, prejudice or corruption, it has absolute discretion to award zero to ten thousand dollars upon a determination of liability. And there is no legal inconsistency in the jury's determination to award funeral expenses but "No" damages. *W. Va. Code* 1931, 55-7-6, as amended, provides for separate recoveries, or the possibility of the same, for what was once regarded as three separate causes of action: (1) damages for the wrongful death not to exceed $10,000; (2) further compensatory damages sustained by distributees not exceeding the sum of $100,000; and (3) further damages recoverable by the administrator for reasonable funeral, hospital, medical and related specials incurred as a result of the wrongful death. For a period of time, the Legislature considered the first and third components of the current statute to be so separate and distinct that it was determined that the claim for funeral expenses, etc. could not be joined with the presentation of a wrongful death claim at trial. *Jackson v. Cockill,* 149 W. Va. 78, 138 S.E.2d 710 (1964). Although that curiosity had been remedied by subsequent amendment and the claims may be joined in one action, there appears to be no *per se* inhibition against the jury returning apparently inconsistent verdicts, i.e. allowing funeral expenses, but disallowing damages for wrongful death.

The foregoing discussion, however, begs the more basic question of whether the verdicts in this case were inadequate at law.

Nothing has been brought to our attention which would indicate that the jury considering the Kesner claims was motivated and influenced by passion, prejudice, partiality or corruption in the rendition of its verdicts. As noted by the trial judge, quite the opposite appears to be true; the trial proceedings, as relates to the jury's part in it, were unexceptional.

On the other hand, it is the opinion of the Court that the jury was misled, and thereby entertained a mistaken view of the case, by the giving of an irrelevant and prejudicial instruction. Over the plaintiff's objections, the trial court charged the jury as follows:

> "The Court instructs the jury that the term 'unavoidable accident' means an accident which was not due to the negligence of any person involved, but was due to a series of events or circumstances not in the control of any person involved, consequently not the fault of any person involved. You are further instructed that if you believe from the evidence that the death of each Carol Ann Kesner and Dianna Lee Kesner in this case was the result of an unavoidable accident, then you cannot return a verdict in favor of the plaintiffs and should return a verdict for the defendants, D. H. Trenton and Arthur Trenton."

There is no foundation in the evidence which would warrant the giving of an "unavoidable accident" instruction. The marina operators had a trap on their land which they, and not the Kesners, were aware of. Arthur Trenton had previously roped-off the area of the hidden step-off created by the man-made channel. The ropes were down, and not replaced, on the day of the tragic accident.

Although the so-called "attractive nuisance" doctrine is not recognized in this jurisdiction and although an

artificial pond or lake is not *per se*, a dangerous instrumentality, this Court has stated that:

> ". . . [I]f some feature or element of the instrumentality or premises operates as a hidden danger or trap, liability may arise against the owner or the one in control thereof. [citations omitted] Peculiar or unusual features in or about pools or ponds of water which result in extraordinary dangers, particularly when hidden, have been held to be a sufficient additional element to render the owner liable for injury resulting therefrom." *White v. Kanawha City Co.*, 127 W. Va. 566, 570-71, 34 S.E.2d 17, 19 (1945) (recognizing the principle).

The principle was applied subsequently in *Hatten v. Mason Realty Co.*, 148 W. Va. 380, 135 S.E.2d 236 (1946):

> "An artificial pool of water may constitute a 'dangerous instrumentality' if there exists in connection with it something which constitutes a hidden danger or trap." *Syllabus* point 2., *id.*

Thus, the failure to use ordinary care to provide reasonably safe premises for business invitees, resulting in harm, demonstrates negligence on the face of the record. Under the circumstances, it was prejudicial error to give an "unavoidable accident" instruction to the jury since such charge should not be given where actionable negligence of the alleged tort-feasor is supported by the evidence. *Hollen v. Linger*, 151 W. Va. 255, 260, 151 S.E.2d 330, 333 (1966); *see, Boury v. Hamm*, 156 W. Va. 44, 190 S.E.2d 13 (1972).

A verdict of a jury which is assailed as inadequate at law is properly set aside by the trial court where that court erroneously instructed the jury on a theory not supported by the evidence and thus may have misled the jury or may have given it a mistaken understanding of the law applicable to facts of the case. *See, Keiffer v.*

*Queen,* 189 S.E.2d 842 (1972); *Raines v. Faulkner,* 131 W. Va. 10, 48 S.E.2d 393 (1947) (excessive verdict).

The judgment of the Circuit Court of Grant County, awarding appellee new trials, is affirmed.

*Affirmed.*