**John R. COX and Rhonda K. Cox, as natural parents and next friend of Melissa Dawn Cox, Melissa Dawn Cox, individually, John Eric Cox and Jeffrey Robert Cox, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 90–0126–C(S).

United States District Court,
N.D. West Virginia.

Dec. 4, 1992.

---

David J. Romano, Clarksburg, WV, for plaintiffs.

William A. Kolibash, Helen Campbell Altmeyer, Wheeling, WV, for defendant.

***MEMORANDUM OPINION AND ORDER***

STAMP, District Judge.

### I. Introduction

Plaintiffs, filed the complaint in this civil action on December 11, 1990. The complaint, which was filed under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1986), alleges that negligence on the part of the Corps of Engineers caused injury to the plaintiff, Melissa Dawn Cox. Ms. Cox was injured at Sutton Lake in Braxton County, West Virginia on June 6, 1988, when she fell from a rope swing which was hanging from a tree near the edge of the lake. Four motions remain pending in this matter and will be resolved in this opinion. First, the United States filed, on March 29, 1991, a Motion To Dismiss Under Rule 12(b)(6) Of The Federal Rules Of Civil Procedure And Motion To Strike Under Rule 12(f) Of The Federal Rules Of Civil Procedure. Plaintiffs filed their responsive memorandum on April 15, 1991. The United States filed its reply brief on April 19, 1991.

Next, the United States filed two motions on September 29, 1992, a Motion To Dismiss For Lack Of Subject Matter Jurisdiction and a Motion For Summary Judgment. Plaintiffs filed their responsive brief on October 20, 1992. The United States filed its reply on October 28, 1992.

Finally, on November 12, 1992, the United States filed a motion to continue the case generally primarily because the other three motions remained pending and the case was set for pre-trial conference on December 4, 1992, and jury selection and commencement of trial on January 5, 1993. The plaintiffs filed their response, opposing the motion, on November 20, 1992.

For the reasons stated herein, and as previously communicated to the parties by telephone prior to the entry of this Memorandum Opinion and Order, the United States' motion to dismiss for lack of subject matter jurisdiction is DENIED. The United States' motion for summary judgment is GRANTED. Because this Court will grant summary judgment in favor of the United States, this Court does not address the United States' motion to dismiss and strike. In addition, because this Court is granting summary judgment, the motion for continuance is rendered moot.

### II. Undisputed Facts

The Sutton Lake reservoir is a federal flood control project located in Braxton County, West Virginia, on the Elk River, a tributary of the Kanawha River. This project was authorized by the Flood Control Act of 1928, Public Law No. 761, for the primary purpose of flood control. The project is maintained by the United States Army Corps of Engineers, an agency of the United States of America (hereinafter "the United States").

As is usually the case with regard to such federal flood control projects, the lake was opened to the public for recreational purposes. There is no charge by the United States for the use of the lake or the land surrounding the lake for swimming, picnicking, or other recreational purposes. On land encompassed within the project there are three campsites, the most elaborate of which requires a minimal payment of $10 for the use of electricity and facilities. One of the campsites is free of charge. Also located on the lake is a small marina and snack shop which is operated by a concessionaire, Sutton Lake Marina, Inc., which offers snacks and boat rental for those seeking such services. Sutton Lake Marina, Inc., pays a flat rental fee to the United States for the right to operate the stand.

The marina concessionaire paid the United States a flat rental fee of $100.00 per month, in order to operate his business on the Unit-

ed States' property. While the lease contained a provision for graduated rent should its profits exceed a certain amount, the amounts paid under that provision, when activated, were minimal ($105.75 for the year 1990 and $938.00 for the years 1987 and 1988). In addition, pursuant to 33 U.S.C. § 701c–3 (1986), the United States forwards seventy-five percent of the rental received from the concessionaire to the State of West Virginia. The concessionaire is a contractor whose business is operated totally independent of the United States.

The plaintiff's complaint arises due to an accident in which Melissa Cox, who was fourteen years old at the time of the accident, fell from a tree rope swing over an area near the shoreline of the lake as she was attempting to swing out over the lake on June 6, 1988. Ms. Cox fell onto the rocks and never reached the water. There has been no indication as to whether or not Ms. Cox meant to swing out over the water to jump into it or whether she intended merely to swing out over the water and then back to the shore. Melissa, along with two of her school mates, Heather Uldrich and Lorie Flint, had been driven to the lake by Melissa's older brother, Jeff, for the purpose of swimming. Melissa and her brother paid no fees or charges for use of the area. In order to arrive at the location of the rope swing, the plaintiff and her friends went to an area of the lake which was not the designated swimming area. Rather, they walked on a path through a wooded area in order to arrive at the rope swing, which was located in a wooded area next to the Bee Run picnic area of the Sutton Lake Facility. There was no beach nor designated swimming area at the site where the accident took place. As a result of the fall, the plaintiff suffered a serious closed head injury.

### III. Discussion of the Motions

#### A. Motion to dismiss for lack of subject matter jurisdiction

The parties have treated the United States' motion, which in substance is based on 33 U.S.C. § 702c (1986), as a motion to dismiss for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1). Although this may be hair-splitting, the Court believes that it would have been more appropriate to file this motion under FED.R.CIV.P. 12(b)(6). See Hayes v. United States, 585 F.2d 701 (4th Cir.1978). However, since the parties seem to assume that this motion should come under Rule 12(b)(1), and since this distinction will not affect the decision of the motion, the Court will entertain the motion under Rule 12(b)(1).

This Court has subject matter jurisdiction over all cases arising under the Constitution, laws and treaties of the United States. 28 U.S.C. § 1331 (1986). A case cannot arise, however, under federal law, if the United States is immune from suit under that law. The plaintiffs in this case seek to avail themselves of the waiver of sovereign immunity contained in the Federal Tort Claim Act ("FTCA"). 28 U.S.C. § 2674 (1986). See Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). However, several courts have held that the immunity provision of the Flood Control Act of 1928, 33 U.S.C. § 702c, is not repealed by the FTCA. See, e.g. Fryman v. United States, 901 F.2d 79 (7th Cir.1990); Callaway v. United States, 568 F.2d 684 (10th Cir. 1978); Florida E.C.R. Co. v. United States, 519 F.2d 1184 (5th Cir.1975); Dunavant v. United States, 520 F.Supp. 39 (E.D.Ark. 1981). The immunity provision provides in pertinent part: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c.

The United States Supreme Court discussed the immunity provisions of Section 702c in United States v. James, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). In rejecting suggestions that the immunity provision of Section 702c was in any way ambiguous, the Supreme Court held that the terms "flood" and "flood waters" apply "to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." 478 U.S. at 605, 106 S.Ct. at 3121. As to the breadth of the immunity extended by Congress, the Court referred to the immunity as "sweeping", and found it difficult to imagine broader

language. 478 U.S. at 604, 106 S.Ct. at 3121. The Supreme Court quoted the Eighth Circuit, saying Section 702c's language "safeguarded the United States against liability of any kind for damages from or by floods or flood waters in the broadest and most emphatic language". 478 U.S. at 608, 106 S.Ct. at 3121 (quoting *National Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir.1954)).

In *James*, two serious accidents had occurred in Arkansas and Louisiana, in which recreational users of reservoirs were swept through retaining structures when those structures were opened to release waters in order to control flooding. 478 U.S. at 599, 106 S.Ct. at 3118. The plaintiff-petitioners, who had been injured in these incidents argued that the Section 702c immunity did not extend to governmental mismanagement of recreational activities. The Supreme Court rejected this argument, noting that a "clear relinquishment of sovereign immunity [is required] to give justification for tort actions." 478 U.S. at 610, 106 S.Ct. at 3124. Of course, it is obvious that a water management activity like releasing waters to control flooding is no less related to floods and flood waters because it happens to interfere with or even injure recreational users of those same waters. The facts in *James*, therefore, make it an easy case. The parting words of the *James* court majority were that the immunity provision of Section 702c was designed "to protect the Federal Government from any liability that might arise out of flood control." 478 U.S. at 612, 106 S.Ct. at 3124.

■ The issue for this Court in the instant case is whether the immunity provision of Section 702c, as broadly expounded in *James*, applies to the facts before this Court. Clearly, the existence of Sutton Lake is the direct result of flood control. But Ms. Cox, other than going to Sutton Lake on the day of the accident with the general intent to swim in the flood control project, had no direct contact with the flood control project, flood waters, or, in connection with the injury itself, any contact with the water at all. When Ms. Cox fell, she made no contact whatsoever with the water. One could argue that, but for the water, Ms. Cox would not have been on the swing, but no such argument has been

made. Indeed, there has been no evidence that Ms. Cox swung out from the shore with the intent to enter the water, as opposed to merely swinging back to shore. There has simply been no evidence on the extent to which Ms. Cox was enticed by the water to swing on the rope. Thus, did Ms. Cox have sufficient contact with the flood control project to trigger the immunity provision of Section 702c? This Court concludes that she did not.

Of course, recreational activities do not, as such, fall outside the scope of the immunity. However, all cases which have involved recreational activities have dealt with such activities *in the water*. See, e.g. *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *Fryman v. United States*, 901 F.2d 79 (7th Cir.1990); *McCarthy v. United States*, 850 F.2d 558 (9th Cir.1988).

A particularly instructive opinion is *Fryman*. In *Fryman*, Judge Easterbrook, writing for the Seventh Circuit, wrestled with the breadth of the immunity under 33 U.S.C. § 702c, in light of *James*. The plaintiff in *Fryman* had attempted a "shallow, racing" dive into a flood-control lake off of an island that was sometimes submerged when the water was high. 901 F.2d at 80. The plaintiff struck his head on an object in the water and became paralyzed. *Id.* The plaintiff argued that it was the Corps of Engineers' failure to warn of the hazard, as opposed to flood control activities, which caused his injury. *Id.* at 81. The Court noted that such a distinction would allow parties to avoid the effect of *James* "by playing word games." *Id.*

In defining the scope of the language of *James* which suggested that immunity extended to any liability arising out of the management of a flood control project, the *Fryman* court stated:

> *James* was so broadly written that it cannot be applied literally. The "management of a flood control project" includes building roads to reach the beaches and hiring staff to run the project. If the Corps of Engineers should allow a walrus-sized pothole to swallow tourists' cars on the way to the beach, or if a tree-trimmer's car should careen through some picnickers,

these injuries would be "associated with" flood control. They would occur within the boundaries of the project, and but for the effort to curtail flooding the injuries would not have happened. Yet they would have nothing to do with management of flood waters, and it is hard to conceive that they are "damage from or by floods or flood waters" within the scope of § 702c.

*Id.* Although couched in somewhat jocular terms, the message of the Seventh Circuit in *Fryman* is significant to the instant case— immunity under Section 702c, even if intended to be broad and sweeping, requires a certain "nexus" to the flood waters. *See Boyd v. United States,* 881 F.2d 895, 900 (10th Cir.1989).

*Boyd* is interesting on this point as well in that the court in *Boyd* found that a death occurring in the water of a federal flood control project did not trigger the immunity of Section 702c. In *Boyd,* the decedent was killed by a boat while snorkeling. 881 F.2d at 896. The plaintiff widow's claims against the government centered around allegations of failure to warn. *Id.* Her argument that immunity should not attach was that the accident had no relation to flood control, but was solely a recreational incident. The Tenth Circuit agreed, stating that "[s]uch a connection between flood control activity and recreational injuries is too attenuated to warrant the invocation of § 702c.... We believe Congress' concern was to shield the government from liability associated with flood control operations ... not liability associated with operating a recreational facility." *Id.* at 900 (citations omitted).

This Court chooses to follow the logic of *Fryman* and *Boyd.* It is interesting to note that the *Fryman* court chose to illustrate situations where immunity would not apply by citing hypothetical scenarios wherein accidents occurred on land near, but not in, the water of a flood control project. This Court believes that *Fryman* properly defines the outer limits of Section 702c immunity. In addition, it is difficult to imagine immunity being triggered by purely recreational activity out of the water, when the *Boyd* case holds that no immunity attached to purely recreational activities in the water.

Assuming, *arguendo,* that the United States was negligent in allowing the tree swing to remain in place for Ms. Cox to be injured on, this would constitute mismanagement of land adjacent to a flood control project and flood water, not mismanagement of the project or water itself. This Court finds that the injuries Ms. Cox sustained had no connection with floods or flood waters. Therefore, the immunity provision of 33 U.S.C. § 702c is inapplicable. Accordingly, the motion of the United States to dismiss this action for lack of subject matter jurisdiction is hereby DENIED.

### B.  Motion for summary judgment

#### 1.  Rule 56 Standards

Under FED.R.CIV.P. Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Id.* The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "Rule 56(c) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. *See also Trevathan v. Newport News Shipbuilding & Dry Dock Co.,* 944 F.2d 902 (4th Cir.1991) ("Summary judgment should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the

law." (citing *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950))).

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hospital*, 912 F.2d 73, 78 (4th Cir.1990). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*2. Whether there exists a genuine issue of material fact as to the limitation of the liability of the United States under W.Va. Code § 19–25–2*

The West Virginia Legislature, in line with the legislatures of most states, enacted a statute for the purpose of encouraging landowners to make available land and water areas for the recreational purposes of the general public. West Virginia's statute was passed in 1965 and states its purpose as follows:

> The purpose of this article is to encourage owners of land to make available to the public land and water areas for recreational or wildlife propagation purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

W.Va.Code § 19–25–1 (1991).

The West Virginia Legislature makes unambiguous the broad limitations of liability afforded to landowners by negating any duty by the landowner to warn of a dangerous or hazardous condition. W.Va.Code § 19–25–2 (1991). The Legislature further limited liability by enacting the following provisions:

> ... [A]n owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational or wildlife propagation purposes does not thereby (a) extend any assurance that the premises are safe for any purpose, or (b) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

W.Va.Code § 19–25–2.

The United States must be afforded the same protection as a private landowner pursuant to the clear language contained in 28 U.S.C. § 2674 of the Federal Tort Claim Act: "The United States shall be liable, respecting the provisions of this Title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...."

Federal courts considering this question have consistently concluded that the United States benefits from any limitations of liability afforded under states' recreational use statutes. *O'Neal v. United States*, 814 F.2d 1285 (9th Cir.1987); *Ewell v. United States*, 776 F.2d 246 (10th Cir.1985); *Proud v. United States*, 723 F.2d 705 (9th Cir.1984).

Although this Court questions whether such recreational use statutes were designed to protect the federal government, nonetheless, at least in West Virginia, there is no statutory exclusion from the limitations for the United States. Indeed, the statutory definitions of "land"[1] and "owner"[2] are written in a manner that makes no distinction between private and public owners of land. *See* W.Va.Code § 19–25–5 (1991).

---

1. W.Va.Code § 19–25–5(a) states that "[t]he term "land" shall include, but not be limited to, roads, water, water-courses, private ways and buildings, structures and machinery or equipment thereon when attached to the realty...."

2. W.Va.Code § 19–25–5(b) states that "the term "owner" shall include, but not be limited to, tenant, lessee, occupant or person in control of the premises...."

An analysis of the facts at issue herein, in light of the West Virginia law cited above, makes clear that no liability can be found on the part of the United States with regard to the plaintiff's injuries.

The only exceptions to the broad limitation of liability contained in the statute are set forth in W.Va.Code § 19–25–4 (1991). Both exceptions are inapplicable herein.

Section 19–25–4(a) removes the limitation where willful or malicious conduct is alleged. The instant complaint is based solely on negligence and thus cannot fall under the purview of that exception.

Section 19–25–4(b) reiterates that the liability limitations do not pertain to a landowner who "charges the person or persons who enter or go on the land. . . ." § 19–25–4(b). The parties have stipulated that the injured plaintiff was not charged by the United States to go on the land in question or to swim in the lake.

The decision of the West Virginia Supreme Court of Appeals in *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975), supports this Court's conclusion that in order for the exclusion contained in W.Va.Code § 19–25–4(b) to apply to the benefit of a plaintiff, *that plaintiff* must have been charged for the use of the land.

In *Kesner*, the defendants leased land from Virginia Electric Power Company ("VEPCO"), which owned the land and lake. 216 S.E.2d at 882. On the lake and land the defendants operated various camping, boating and other recreational facilities, including a marina, all for which fees where charged. The defendant did not, however, charge for swimming. The plaintiff took his family to the VEPCO lake for an outing and so that he could rent a boat for fishing. While Mr. Kesner was waiting at the marina to rent a boat, his two teenage daughters, while swimming nearby, drowned. *Id.* at 883. The defendant argued that W.Va.Code § 19–25–2 protected him from liability. However, the West Virginia Supreme Court concluded that the exception to the limitation of liability, contained in W.Va.Code § 19–25–4(b), for landowners who "charge" for use of the land, applied to the defendant because he had

opened the premises to the public, operated the marina as a money-making business and derived his income from it. As the *Kesner* court pointed out:

> The marina sold and received some boats and parts and rented many boats; in fact, the plaintiff was waiting to rent a boat to go fishing when the tragic accident occurred. . . . defendants in this case reasonably could have expected to have attracted prospective customers and thus, to increase sales and rentals at the marina by allowing people to swim in the lake at no cost. This expectation, which was nearly fulfilled since Mr. Kesner was about to rent a boat to go fishing, was a sufficient 'charge' within the meaning of West Virginia 1931, 19–25–4, as amended.

*Kesner*, 216 S.E.2d at 885.

Thus, the only case which has discussed the Section 19–25–4(b) "charge" exception to the limitation of liability contained in W.Va. Code § 19–25–2 saw the plaintiff himself being charged for his recreational activities in which he was engaged. In addition, the language of W.Va.Code § 19–25–4(b), states that liability is not limited for "injury suffered in any case where the owner of land charges the person or persons who enter or go on the land. . . ." Based on the foregoing propositions, it is the conclusion of this Court that in order for a plaintiff to circumvent the liability limitation of W.Va.Code § 19–25–2 by way of a W.Va.Code § 19–25–4(b) "charge", the plaintiff himself or herself must actually be charged for the use of the facilities at which the injury occurred. The parties have stipulated that Ms. Cox and her friends were charged no fee for any of their recreational activities on the day of the injury.

In this case, the United States had no connection with the operation of the concession, other than to exact a flat rental fee from the concession operator. Even if the "charge" provision of W.Va.Code § 19–25–4(b) were read to apply to landowners who generally charged fees for recreational use of their property, and did not require the plaintiff to have been charged to trigger the exception, no charge sufficient to trigger the exception could be found here. It is true

that the marina concessionaire in the instant case paid a $1200.00 per year rental fee for the marina. In addition, a certain percentage of the marina's profits were paid to the United States, but this amounted only to $105.75 for 1990 and $938.00 for the years 1987 and 1988. These amounts are extremely minimal. When the small amounts are combined with the fact that the United States was required by 33 U.S.C. § 701c–3 to relinquish seventy-five percent of these monies to the State of West Virginia, this Court concludes, as a matter of law, that the United States did not charge for the use of the land.

The clearly stated purpose of the Recreational Use Statute in West Virginia would be rendered totally ineffectual were this Court to find the United States liable in this instance. The Sutton Lake Reservoir is made available to the public as encouraged by the Legislature under the promise of the liability limitations contained in W.Va.Code § 19–25–1, *et seq.* Unlike the defendant in *Kesner*, the United States was not using free swimming to try to sell or rent boats for profit; but rather, the plaintiff was allowed to swim in the lake purely for recreational purposes. If the government or any landowner would be found liable under the factual scenario in this case, such owners of land would clearly be discouraged from opening their lands to the public free of charge, as was clearly the purpose for which the West Virginia Legislature passed the statute.

## C. The first motion to dismiss and strike

On March 29, 1991, the United States filed a motion to dismiss and to strike certain plaintiffs and certain claims of some plaintiffs. Since the granting of the motion for summary judgment disposes of the whole case, it is unnecessary to decide this motion.

## D. The motion of the United States for continuance

The United States moved for a general continuance of the scheduled trial of this case due to the pendency of the motions ruled upon herein. Having so ruled, this motion is rendered moot.

## IV. Conclusion

For the foregoing reasons, this Court concludes that it has subject matter jurisdiction because the immunity provisions of 33 U.S.C. § 702c is inapplicable to this case and the United States' motion to dismiss for lack of subject matter jurisdiction is hereby DENIED. However, because there is no genuine issue of material fact remaining to dispute the applicability of the limitation of liability, contained in W.Va.Code § 19–25–2 for recreational landowners, this Court concludes that the motion of the United States for summary judgment should be, and hereby is, GRANTED. This Court does not need to address the United States' motion to dismiss and strike. The motion for a continuance is herein rendered moot. The pre-trial conference in this matter set for December 4, 1992, and the trial set for January 5, 1993, are hereby VACATED. This case is hereby DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.