**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 94-10636**
_____

**DANIEL A. BOUDREAU,**

**Plaintiff-Appellant,**

**VERSUS**

**UNITED STATES OF AMERICA,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court
for the Northern District of Texas**
_____

(May 12, 1995)

Before SMITH and BARKSDALE, Circuit Judges, and FITZWATER,[1] District Judge.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue is whether the Flood Control Act of 1928, 33 U.S.C. § 702c ("No liability ... [to] United States for any damages from ... flood waters ...."), provides immunity for the United States from the alleged negligence of the Coast Guard Auxiliary in attempting to tow a stranded recreational vessel on a flood control lake. Finding that this activity was "associated with flood control", *United States v. James*, 478 U.S. 597, 608 (1986), we **AFFIRM**.

---

[1] District Judge of the Northern District of Texas, sitting by designation.

On July 5, 1992, Daniel Boudreau and a friend took Boudreau's boat, the SHAMAN, out on Lake Lewisville, Texas. After experiencing engine trouble, Boudreau called for assistance from the Coast Guard Auxiliary, and was told to anchor his vessel. A Coast Guard Auxiliary vessel, the SIMPLE PLEASURE, arrived to assist, and its operator, Thomas Spalding, and his crewmember gave verbal towing instructions to Boudreau.[2] After securing a tow line, Boudreau was instructed to either lift anchor or cut its line. While attempting to lift anchor, the anchor line broke free of its mount and swung into Boudreau's leg, causing severe injury.[3]

Upon Boudreau filing an action against the United States, the Government, *inter alia*, moved, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of subject matter jurisdiction, claiming immunity under § 702c of the Flood Control Act of 1928. The motion was granted.

II.

Boudreau asserts that, under the facts of this case, § 702c immunity does not lie. We review *de novo* a Rule 12(b)(1) dismissal, *e.g.*, **EP Operating Ltd. Partnership v. Placid Oil Co.**, 26 F.3d 563, 566 (5th Cir. 1994), but with Boudreau having the

---

[2]    Observing that winds were at least 30 knots, with waves of three to four feet, Spalding directed Boudreau and his friend to put on life jackets.

[3]    The Government maintains that the anchor line broke free when the wind and waves hit the SIMPLE PLEASURE, causing it to turn sharply and pull the tow line. Boudreau denies that the conditions on the Lake contributed to the accident.

burden of demonstrating jurisdiction. ***Lowe v. Ingalls Shipbuilding, A div. of Litton Sys., Inc.***, 723 F.2d 1173, 1177 (5th Cir. 1984).

Section 702c provides in relevant part: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place". Boudreau concedes that the Lake is a flood control lake. *See* ***McCarthy v. United States***, 850 F.2d 558, 560 (9th Cir. 1988) (finding that Lake Lewisville is a flood control lake), *cert. denied*, 489 U.S. 1052 (1989). At issue, then, is whether his injuries were "from or by ... flood waters".

Guiding our decision is the general principle that "no action lies against the United States unless the legislature has authorized it". ***Dalehite v. United States***, 346 U.S. 15, 30 (1953). Concomitantly, there must be a "clear relinquishment of sovereign immunity to give jurisdiction for tort actions". ***Id***. at 31. This principle is all the more in focus when, as here, a clear reaffirmation of immunity is in play.[4]

---

[4]   As discussed *infra*, the Supreme Court in ***United States v. James***, 478 U.S. 597, 606-07 (1986) (footnotes omitted; brackets by Court; emphasis added) took note of the reaffirmation of immunity by § 702c:

> ...[W]e do not find that the legislative history of the statute justifies departure from the plain words of the statute. Indeed, on balance we think the legislative history of the Flood Control Act of 1928 reinforces the plain language of the immunity provision in § 702c.
>
> The Flood Control Act enacted "a comprehensive ten-year program for the entire [Mississippi River] valley, embodying a general bank protection scheme,

channel stabilization and river regulation, all involving vast expenditures of public funds." *United States v. Sponenbarger*, 308 U.S. 256, 262 (1939). The Act was the Nation's response to the disastrous flood in the Mississippi River Valley in 1927. That flood resulted in the loss of nearly 200 lives and more than $200 million in property damage; almost 700,000 people were left homeless.

As our court has recognized, "[t]he Supreme Court has given [§ 702c] broad meaning based on the language and legislative history of the section". *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 428-29 (5th Cir. 1989) (citing *United States v. James*, 478 U.S. 597, 604 (1986)). Indeed, the Court observed in *James* that "[i]t is difficult to imagine broader language", 478 U.S. at 604, and concluded that "Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from `any' liability associated with flood control." *Id.* at 608.[5] The breadth of the Court's interpretation of § 702c is undeniable.[6]

Notwithstanding the broad language of *James*, there is disagreement among the circuits on the application of § 702c. *Hiersche v. United States*, 112 S. Ct. 1304, 1305 (1992) (Stevens, J.) (recognizing, but refusing to resolve circuit split), *denying cert. to* 933 F.2d 1014. Three examples suffice.

---

Frear).

[5]    In construing § 702c in *James*, the Court stated:

> The Act concerns flood control projects designed to carry floodwaters. It is thus clear from § 702c's plain language that the terms "flood" and "flood waters" apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control.

478 U.S. at 605.

[6]    As the Seventh Circuit observed: "The [Supreme] Court found it hard to conceive how § 702c could have been more broadly written; we find it hard to conceive how a decision interpreting this statute could have been more broadly written." *Fryman v. United States*, 901 F.2d 79, 81 (7th Cir.), *cert. denied*, 498 U.S. 920 (1990).

The Ninth Circuit applies the "wholly unrelated" test; immunity is denied only when an injury is "wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization". *Morici Corp. v. United States*, 681 F.2d 645, 647 (9th Cir. 1982) (quoting *Peterson v. United States*, 367 F.2d 271, 275 (9th Cir. 1966)); *see also* *McCarthy*, 850 F.2d at 562.[7]  On the other hand, the Tenth Circuit "cannot agree that Congress intended to stretch the shield of flood control immunity to the limits contemplated by the `wholly unrelated' standard". *Boyd v. United States*, 881 F.2d 895, 900 (10th Cir. 1989).  The Seventh Circuit would at least grant immunity where an injury is "more likely" because of the "activities or characteristics" of a flood control project. *Bailey v. United States*, 35 F.3d 1118, 1124 (7th Cir. 1994).[8]

In our circuit, the analysis is fact-specific. *See* *Mocklin*, 877 F.2d at 429-30 (applying fact-specific analysis; deciding only

---

[7]     In *McCarthy*, the Ninth Circuit upheld immunity after the plaintiff dove into shallow water at Lake Lewisville and fractured his neck. *McCarthy v. United States*, 850 F.2d 558, 563 (9th Cir. 1988).  The court reasoned that the creation of the flood control project at the Lake created a passive condition which led to the injuries; therefore, the injury was not "wholly unrelated" to flood control. *Id*. at 561-63.  Likewise, the court concluded that the alleged negligence by the Government in failing to post warning signs for the benefit of recreational users of the lake was not "wholly unrelated" to flood control. *Id*. at 563.

[8]     In *Fryman*, the Seventh Circuit had earlier explained that it would not rule out the possibility that immunity might apply even in cases where an injury was not made more likely by flood control activities, but only happened to occur at a flood control lake. Not required to reach that question, the court declined to do so. *Fryman*, 901 F.2d at 82; *accord* *Bailey v. United States*, 35 F.3d 1118, 1124 (7th Cir. 1994).

the case before it).[9]  As hereinafter discussed, and based on the facts of this case, we conclude that, as per **James**, there is a sufficient association between the Coast Guard Auxiliary's activities and flood control.

**James** included "`management' of a flood control project" within the ambit of activity associated with flood control.  478 U.S. at 609-610.[10]  In turn, the district court based its decision to apply § 702c immunity in this case on the fact that the alleged negligence was by the Coast Guard Auxiliary, which "is part of the Government's management of Lake Lewisville and serves to control the waters in a variety of capacities".  Relying on **James**, the district court concluded that the Auxiliary's management of the flood control lake established the requisite nexus between Boudreau's injury and flood control.

Boudreau challenges this conclusion, contending that the Auxiliary's responsibilities on the Lake consisted only of water safety management, and were therefore unrelated to flood control.

---

[9]    In **Mocklin**, plaintiffs' son drowned when he slipped from a sand bar into a flotation channel in Lake Pontchartrain. **Mocklin v. Orleans Levee Dist.**, 877 F.2d 427, 428 (5th Cir. 1989).  The flotation channels had been dredged to provide access for barges carrying equipment for the reinforcement of the flood control levees along the lake.  **Id.**  Finding that the channels "were inescapably part of a flood control project", our court concluded that "the [flood control] water in the flotation channel causally did contribute to the drowning of the Mocklins' son: the channel created a significant drop-off in the lake".  **Id.** at 430.  Accordingly, § 702(c) immunity applied.  **Id.**

[10]   The **James** Court stated that "the manner in which to convey warnings, *including the negligent failure to do so*, is part of `management' of a flood control project".  478 U.S. at 610 (emphasis added).

His primary support comes from note 7 to the **James** opinion. That note contains a string-cite including **Hayes v. United States**, 585 F.2d 701, 702-03 (4th Cir. 1978). **James**, 478 U.S. at 605 n.7. The parenthetical following the citation quotes a portion of **Hayes**, reading: "If the plaintiff could prove damage ... as a result of the dam's operation as a recreational facility *without relation to the operation of the dam as a flood control project*, he would avoid the absolute bar of § 702c." **Id.** (Emphasis added in **James**.)

Viewed in isolation, the Court's citation to **Hayes** appears to support Boudreau; but, on close examination, it does not. First, the note is only in reference to the Court's statement in the text that "the waters [in issue] clearly fall within the ambit of the statute"; that statement did not concern when immunity would not bar liability for injury from flood waters. **Id.** at 605. Second, note 7 is internally inconsistent. In the same note, and *before* the citation to **Hayes**, the Court also cites **Morici**, 681 F.2d 645 at 647-48, for the proposition that immunity is available unless the Government's activity is "wholly unrelated" to flood control. **James**, 478 U.S. at 605 n.7. And, **Morici** *specifically rejected* the **Hayes** approach. **Morici**, 681 F.2d at 647-48.[11]

Furthermore, as quoted in note 10, *supra*, the Court concluded in **James** that even the Government's *failure to warn* recreational

---

[11]    In view of this inconsistency, the Seventh Circuit concluded: "We make nothing of the Court's citation to **Hayes**.... [C]iting inconsistent holdings does not endorse either." **Fryman**, 901 F.2d at 81. *See* **Zavadil v. United States**, 908 F.2d 334, 336 n.4 (8th Cir. 1990), *cert. denied*, 498 U.S. 1108 (1991); **Dawson v. United States**, 894 F.2d 70, 73 (3d Cir. 1990); **McCarthy**, 850 F.2d at 562; **Cox v. United States**, 827 F. Supp. 378, 381 (N.D.W.Va. 1992).

visitors of dangerous conditions fell within "the `management' of a flood control project". 478 U.S. at 610. Such management is involved here.[12] The creation of the flood control project resulted in the Army Corps of Engineers being responsible for providing water safety patrols at the Lake.[13] The Corps of Engineers, in turn, reached an agreement with the Coast Guard Auxiliary to perform this function.[14] Therefore, just as, under the facts in *James*, the Government had the responsibility to warn of dangerous water conditions, the Government had the responsibility under the

---

[12] Many of the § 702c cases involve accidents occurring at or near hydroelectric dams at flood control projects. *See, e.g.*, *James*, 478 U.S. at 599-601 (accidents at flood dams in Arkansas and Louisiana). We note with interest that, when the Auxiliary was dispatched to find Boudreau's boat, it was reported located "out by the dam".

[13] The Flood Control Act of 1962 authorized the Corps of Engineers to "construct, maintain, and operate public park and recreational facilities" at flood control projects. 16 U.S.C. § 460d. Thus, upon the creation of a flood control project: "It is the policy of the Secretary of the Army, acting through the Chief of Engineers, to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities ...." 36 C.F.R. § 327.1(a).

[14] The Memorandum of Agreement between the Corps of Engineers and Coast Guard reads in part:

> 1. Responsibility[.]
>
> A. Both the U.S. Army Corps of Engineers and the U.S. Coast Guard are responsible for administering water safety programs on inland lakes under their concurrent jurisdictions....
>
> 2. Purpose of Agreement.
>
> A. Recognizing the above responsibilities, it is hereby granted that the purpose of this agreement is to facilitate water safety patrols by local U.S. Coast Guard Auxiliary....

facts in this case to provide water safety patrols. In each instance, the responsibility arose because of the establishment of a flood control project. Likewise, in each instance, the Government's activity is properly considered part of the "management of a flood control project".

Notwithstanding that the Auxiliary was engaged in the management of a flood control project, Boudreau contends, as noted, that his injury is completely unrelated to flood control. Although we disagree, we note the suggestion by some courts that "management of a flood control project" may well be insufficient, standing alone, to allow for § 702 immunity. As the Seventh Circuit observed:

> The "management of a flood control project" includes building roads to reach the beaches and hiring staff to run the project. If the Corps of Engineers should allow a walrus-sized pothole to swallow tourists' cars on the way to the beach, or if a tree trimmer's car should careen through some picnickers, these injuries would be "associated with" flood control.... Yet they would have nothing to do with management of flood waters, and it is hard to conceive that they are "damage from or by floods or flood waters" within the scope of § 702c.

*Fryman v. United States*, 901 F.2d 79, 81 (7th Cir.), *cert. denied*, 498 U.S. 920 (1990); *Cox*, 827 F. Supp. at 381-82. We leave for another day whether this should influence future decisions by this court. In any event, if the foregoing represents an over-application of § 702, the present case is safely removed from that realm. Here, we cannot say that Boudreau's injury has "nothing to do with management of flood waters". His injury resulted from a *boating* accident *on flood control waters* involving the *Government's*

*patrol of those waters.* Assuming, without deciding, that something more is required in addition to "management of a flood control project", we are confident that, based on the facts at hand, this case meets the mark.[15]

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

JERRY E. SMITH, Circuit Judge, dissenting:

"[A]s with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). The relevant statutory provision for this case states:

> No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place.

33 U.S.C. § 702c.

---

[15] The Government notes that, but for the creation of the flood control project at the Lake, Boudreau could not have been injured there. It notes also that a boating accident such as this could occur only on water. But we need not stop there. Although causation is disputed, the conditions on the Lake and the location of Boudreau's vessel certainly made an accident of this nature more probable. For example, not only did the accident occur at a flood control lake, it occurred in an area that would not have been submerged without flood control. In this regard, the Government maintains that Boudreau's anchor was caught in trees beneath the surface of the lake -- trees submerged only as the result of flood control. Furthermore, it is evident from the record that the waves, high winds, and other conditions on the lake *could* have contributed to the accident.

The Supreme Court acknowledged, and the majority emphasizes, the broad nature of this language.  See United States v. James, 478 U.S. 597, 604 (1986).  Specifically, the Court has emphasized the word "any," which appears three times in the relevant provision. Id.  This case, however, does not turn on language from the relevant provision that is modified by the word "any."

The simple question is whether the damages in this case were "from or by floods or flood waters."  I will assume that the circumstances in this case involved "floods or flood waters" within the meaning of the statute, though this might be disputed.  See James, 478 U.S. at 605 and n.7; Denham v. United States, 646 F. Supp. 1021, 1026-27 (W.D. Tex. 1986) (holding that injury sustained from flood control project's use as a recreational facility was not subject to immunity provision of § 702c), aff'd, 834 F.2d 518 (5th Cir. 1987).[1]  Immunity under § 702c simply does not apply, because there is no reasonable construction of the plain language of this provision by which the damage in this case was "from or by" flood waters.

It is undisputed that the injury resulted from a Coast Guard rescue attempt at Lake Lewisville.  Water had nothing to do with the injury, except that but for the very existence of the water, the injury would not have occurred.  This type of connection, however, is too tenuous to be supported by a rational construction of "from or by."

_____

[1]  I realize that this point may be part and parcel of the causation analysis or vice versa.  See Denham, 646 F. Supp. 1026.  I concentrate on the causation point specifically, for emphasis.

The majority admits as much by holding that the relevant nexus is between the injury and "flood control," not flood waters. The majority rejects the suggestion that its holding is overly broad, i.e., that a broad reading conceivably could extend governmental immunity to traffic mishaps or tree-trimming mistakes related to the "management of a flood control project." See Fryman v. United States, 901 F.2d 79, 81 (7th Cir.), cert. denied, 498 U.S. 920 (1990). Instead, the majority claims that "the present case is safely removed from that realm. Here, we cannot say that Boudreaus's injury has 'nothing to do with management of flood waters.'"

The word "management" appears nowhere in the relevant provision of § 702c, however. It is gleaned from the following passage in James:

> [Plaintiffs] also argue, in the alternative, that even if 702c is intended to grant immunity in connection with flood control projects, the Federal Government is not entitled to immunity here because their injuries arose from Government employees' alleged mismanagement of recreational activities wholly unrelated to flood control. In support of this argument they point to a "fundamental principle of immunity" that the "sphere or protected activity must be narrowly limited by the purpose for which the immunity was granted." We think, however, that the manner in which to convey warnings, including the negligent failure to do so, is part of the "management" of a flood control project. And as noted in n. 7, supra, the Court of Appeals found that the release of waters at the [accident sites] was clearly related to flood control.

Id. at 609-10 (emphasis added). Neither this passage nor the facts of James support the conclusion that a nexus between the damage and flooding has been jettisoned.

- 13 -

The litigation in James was the result of the consolidation of two separate accident cases. In both cases the accidents occurred in the reservoirs of federal flood control projects. In both, recreational users were swept through retaining structures and either drowned or injured when the structures were opened to release water to control flooding. Id. at 599-602. There is no doubt that the injuries were caused by flood waters.[2]

Despite its denial, under the majority's reading of the "management" language from James, a negligent failure to warn a motorist of a road hazard, resulting in an accident within the confines of a recreational area that is part of a flood control project, would give rise to immunity under the Flood Control Act, because such a "failure to do so [] is part of the 'management' of a flood control project."

This passage from James must be construed in light of the facts of James and the plain language of § 702c. The predicate of the Court's language was injuries plainly caused by flood waters. This threshold is simply not met in the instant case. As indicated above, the Supreme Court acknowledged that the language of § 702c is broad; it did not indicate, however, that the provision should be read as "any damage related to the management of a federal flood control project." Accordingly, because the alleged damages in this case were not caused by flooding, I respectfully dissent.

---

[2] As the majority indicates, the accident in this circuit's case, Mocklin v. Orleans Levee Dist., 877 F.2d 427 (5th Cir. 1989), was the drowning of the son of the plaintiffs.